PEOPLE v MARLAND

PEOPLE v LANGE

Docket Nos. 65706, 66547. Submitted June 14, 1983, at Lansing.—
Decided June 18, 1984. Leave to appeal applied for.

Jonston S. Marland and Richard Lange were convicted in a joint
trial of breaking and entering an occupied dwelling with intent
to commit larceny, Genesee Circuit Court, Harry B. McAra, J.
Defendants appealed, and the appeals were consolidated by the
Court of Appeals. On appeal, defendants allege that the trial
court erroneously admitted into evidence the transcript of a
tape recording of defendants' conversation made without defen-
dants' knowledge while the defendants were detained in the
rear seat of a police car while police officers investigated to
determine whether the defendants were involved in criminal
activity. In addition, defendant Marland alleges error in the
jury instructions and in the court's denial of his request for an
adjournment of his sentencing, and defendant Lange alleges
error in the denial of his request for an adjournment of trial
and in the admission into evidence of a statement made by
defendant Marland. *Held:*

1. The actions of the police officer when confronted with the
suspicious activities of the defendants were reasonable under
the circumstances. The suspects were properly detained in the
police car while the lone officer obtained assistance and while
the area was checked for indications of criminal activity and,
upon discovery of evidence connecting the defendants to a
break-in, the defendants were properly placed under arrest.

2. The surreptitious tape recording of the defendants' conver-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 601, 602.
  29 Am Jur 2d, Evidence § 249.
[2] 5 Am Jur 2d, Appeal and Error § 880 *et seq.*
[3-5] 68 Am Jur 2d, Searches and Seizures § 103.
[5] 16A Am Jur 2d, Constitutional Law § 601 *et seq.*
  62 Am Jur 2d, Privacy § 17.
[6] 30 Am Jur 2d, Evidence § 1148 *et seq.*
[7] 17 Am Jur 2d, Continuance §§ 1, 3.

sation while seated in the police car was not improper. The defendants could have no expectation of privacy in the police car and, indeed, the conversation indicates that they were aware they might be overheard. Admission of the transcript of the conversation was not error. Furthermore, the statements of each defendant were admissible against each other.

3. Defendant Marland failed to object to the jury instruction regarding the order of deliberation to be followed by the jury. His claim of error is thus precluded from consideration on appeal.

4. The trial court did not err by denying Marland's request for an adjournment of sentencing.

5. No showing of prejudice was made regarding the trial court's denial of defendant Lange's request for a continuance.

6. A statement made by Marland to police regarding his acquaintance with Lange was properly admitted into evidence.

Affirmed.

1. APPEAL — EVIDENCE — PRESERVING QUESTION — CONSTITUTIONAL LAW.

A defendant's failure to object at trial to the admission of evidence generally precludes appellate review on the issue of the improper admission of the evidence; however, review is not precluded where a constitutional question is involved.

2. APPEAL — EVIDENCE — QUESTION RAISED FIRST ON APPEAL.

A two-part standard of review is applied where a defendant raises a constitutional question regarding the admission of evidence for the first time on appeal: (1) was the evidence decisive, and (2) was the evidence erroneously admitted.

3. CRIMINAL LAW — INVESTIGATIVE STOP — PROBABLE CAUSE.

A police officer must have a reasonable belief that criminal activity may be occurring in order to make an investigatory stop; it is not necessary for the officer to have probable cause to arrest in order to make such an investigatory stop.

4. CRIMINAL LAW — INVESTIGATIVE STOP — DETENTION OF SUSPECT.

A police officer may communicate with others, either police or private citizens, in an effort to verify an explanation tendered by a suspect questioned during an investigatory stop, and the suspect may be detained while it is determined if in fact an offense has occurred in the area.

5. CRIMINAL LAW — CONSTITUTIONAL LAW — EXPECTATION OF PRI-
   VACY.

   A defendant can have no reasonable expectation of privacy when
   he has been detained by being placed in the back seat of a
   police car.

6. CRIMINAL LAW — ADMISSIONS — CODEFENDANTS.

   Admissions and statements of a codefendant are admissible
   against another defendant if there exists a concert of action
   between the defendants and the statements are made while the
   common scheme or plan is still in effect.

7. TRIAL — CONTINUANCE — COURT RULE.

   Except where the court, within its discretion and to promote the
   ends of justice, adjourns a cause, continuance of any trial or
   hearing upon stipulation shall not be granted unless the stipu-
   lation is made in writing or made orally only in open court and
   is based upon good cause shown to the satisfaction of the court
   under all of the circumstances of the case and with a view
   toward speedy and substantial justice (GCR 1963, 503).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Bruce Crossman,* for defendant Marland on appeal.

*Steven W. Moulton,* for defendant Lange on appeal.

Before: M. J. KELLY, P.J., and SHEPHERD and R. I. COOPER,* JJ.

R. I. COOPER, J. Defendants were jointly tried and convicted by a jury of breaking and entering an occupied dwelling with intent to commit a larceny, MCL 750.110; MSA 28.305. Both defendants received sentences of 10 to 15 years in prison and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

both defendants appeal their convictions as of right.

The undisputed facts are as follows. Shortly after midnight, while doing a safety check in the parking lot of a 7-11 party store, officer Martin Brock observed a Buick parked away from the party store. He noticed the Buick's brake lights flashing on and off and the driver looking over his shoulder several times. Officer Brock stopped and briefly questioned defendant Lange, the driver, who said he was waiting there for "a couple of chicks". During this time the brake lights flashed on and off several more times and Mr. Lange acted very nervous according to officer Brock's testimony. Brock told him to stay where he was while he drove around the immediate area. The officer saw a second person, later identified as defendant Marland, behind the building. When the officer approached defendant Marland, Marland tried to run away with Brock in pursuit. As Marland approached the Buick, defendant Lange waved him away. Defendant Marland then entered the party store but came back out when officer Brock motioned for him to exit from the party store. Officer Brock asked defendant Marland if he knew the man in the Buick and Marland replied in the affirmative. Officer Brock then placed Marland in the back seat of his police car and radioed for assistance from Grand Blanc Township police officers so that he could check what was going on at that particular time. He also turned on a tape recorder sitting on the front seat of his cruiser. Officer Brock returned to defendant Lange who was still waiting in the Buick. Officer Brock asked Lange if he knew the man who had tried to get into the Buick. Lange responded that he had never seen him before in his life. Brock then ordered

Lange out of the car, patted him down and placed him in the back seat of the police car with Marland.

While seated in the police cruiser, the defendants had a conversation which was recorded by the tape recorder in the front seat. Both defendants made incriminating statements while sitting in the cruiser. Neither defendant was told of the existence of the tape recorder or that it was turned on. However, a transcript of the recording shows that the defendants commented that the "police radio could be hooked up". The trial court denied defendants' motion to quash the tape recording, on the grounds that there was no *Miranda*[1] violation because there had been no interrogation. The jury was allowed to have copies of the edited transcript of the tape recording.

The tape recorder had been turned on prior to the first defendant's being placed in the patrol car. While the defendants were talking in the patrol car, a police officer was positioned behind the cruiser, but not within hearing distance of the defendants. Officer Brock in the meantime returned to the area where he had first seen defendant Marland, and followed a trail of footprints to a nearby house. He found that the back porch window had been smashed out and it appeared as though someone had attempted to kick out the storm door because there were footprints on the door. Also a window on the front porch had been broken out. Defendant Marland's tennis shoes had broken glass imbedded in them. Officer Brock testified that the tape recorder "was laying in plain view on the front seat".

Both defendants on appeal claim that the tran-

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

script of the defendants' conversation was erroneously admitted at trial because it was the fruit of an illegal arrest. Generally, a defendant's failure to object to the admission of evidence at trial precludes appellate review. *People v Paul Williams,* 118 Mich App 117; 325 NW2d 4 (1982). However, despite the fact that neither defense counsel raised the issue of the legality of the warrantless arrest at trial, this Court's review is not precluded, because the courts have recognized an exception to this rule when a constitutional question is involved. *People v Crawl,* 401 Mich 1, 31; 257 NW2d 86 (1977).

This Court has established a two-part standard of review:

"Where a defendant raises a constitutional question for the first time on appeal, we must ask two questions: (1) was the evidence decisive, and (2) was the evidence erroneously admitted into evidence." *People v Woodard,* 111 Mich App 528, 531; 314 NW2d 680 (1981), quoting *People v Bukoski,* 41 Mich App 498, 501; 200 NW2d 373 (1972).

This Court answers in the affirmative regarding the former question for the reason that the transcript of the recording was provided to the jury and clearly incriminated the defendants. This Court answers in the negative regarding the latter question for the reason that the action of officer Brock was reasonable. *People v Martin,* 99 Mich App 570; 297 NW2d 718 (1980); *People v Bloyd,* 96 Mich App 264; 292 NW2d 546 (1980); *People v Carter,* 96 Mich App 694; 293 NW2d 681 (1980); *People v Grimmett,* 97 Mich App 212; 293 NW2d 768 (1980). Addressing the matter as events unfolded, this Court observes that probable cause to arrest is not necessary for an investigative stop. It

is necessary that the officer have a reasonable belief that criminal activity may be occurring. *People v Johnson,* 81 Mich App 70; 264 NW2d 125 (1978); *People v Lillis,* 64 Mich App 64; 235 NW2d 65 (1975). Officer Brock's action in stopping both defendants initially and briefly questioning them was a proper investigatory stop under *Terry v Ohio,* 396 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Because of the continued blinking of the brake lights, defendant Lange's continually looking over his shoulder, and his nervous response, Officer Brock was justified in his instruction that defendant Lange remain in his Buick while the officer drove around the immediate premises. Upon spotting defendant Marland behind the store and receiving a response that he was urinating, the officer was justified in pursuing defendant Marland when he thereupon attempted to run away and was waved off as he sought to enter defendant Lange's Buick. The contradictory answers by defendant Lange that he did not know Marland and Marland's response that he did know Lange justified the officer's continued investigation by having placed both defendants in the back of his patrol car. The removal to the patrol car was reasonable in that the lone officer now was dealing with two persons without any assistance. When assistance arrived, officer Brock immediately followed the footprints, apparently left by defendant Marland in that they matched the footwear Marland was wearing, which led to a nearby residence where indications of a breaking and entering existed. The situation clearly evolved from a reasonable suspicion that criminal activity had been taking place to justify the initial stop to probable cause that an offense was committed and that the suspect committed it based on the evidence of the breaking and entering. *People v Lillis,* 64 Mich App 64; 235

NW2d 65 (1975); *People v Langston,* 57 Mich App 666; 226 NW2d 686 (1975); *People v Murphy,* 28 Mich App 150; 184 NW2d 256 (1970).

We recognize at the outset that defendants were not placed under formal arrest when they were detained in the back seat of the patrol car. Nevertheless, we hold that defendants were "seized" within the meaning of the Fourth Amendment since they would have been prevented from leaving the area had they attempted to do so. *Michigan v Summers,* 452 US 692, 696; 101 S Ct 2587; 69 L Ed 2d 340 (1981); *Dunaway v New York,* 442 US 200, 212; 99 S Ct 2248; 60 L Ed 2d 824 (1979); *People v Freeman,* 413 Mich 492, 495; 320 NW2d 878 (1982). The case of *People v Bloyd,* 416 Mich 538; 331 NW2d 447 (1982), provides a pertinent analysis regarding the issue of what is the permissible scope of a detention based on less than probable cause. The *Bloyd* Court cites *Dunaway v New York* as follows:

"[T]he court held that a detention for custodial interrogation, a procedure that was indistinguishable from a traditional arrest, must be supported by probable cause." 416 Mich 545.

In *Dunaway* the police had driven the defendant to police headquarters in a patrol car and placed him in an interrogation room. In both the *Bloyd* situation and *Dunaway,* the *Bloyd* Court observed that the defendant was not questioned briefly where he was found. In *Bloyd,* the police observed pornographic material in defendant's car and proceeded to place the defendant in their patrol car while they drove to two different locations trying to determine if establishments which sold pornographic material had been broken into.

Next the *Bloyd* Court analyzed the case of *Mich-*

*igan v Summers,* 452 US 692; 101 S Ct 2587; 69 L Ed 2d 340 (1981). Quoting *Terry v Ohio, supra,* the *Summers* Court stated as follows:

" '[S]ome seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity'. 452 US 699."

As stated in *Summers,* a police officer may communicate with others, either police or private citizens, in an effort to verify an explanation tendered. A suspect may be detained while it is determined if in fact an offense has occurred *in the area,* a process which might involve checking certain premises, locating and examining objects abandoned by the suspect, or talking with other people. *Bloyd, supra,* p 549. The above language is specifically addressed to investigative techniques based on a *Terry*-type stop. Such investigative methods are not considered inherently objectionable provided the period of detention is not unduly long or does not involve moving the suspect to another locale. 3 LaFave, Search & Seizure, § 92, pp 36-37. Further, the *Bloyd* Court observed that the *Summers* decision did not preclude the possibility of justifying similar police conduct without a warrant if the warrant requirement is excused by exigent circumstances. 452 US 702, fn 17. Applying the above citations of law, we observe in the present case that officer Brock first observed suspicious activity because the car was located at a portion of the parking lot not normally used for the parking of cars at that period of the night. He observed the brake lights flashing which signified to him that

the driver may have been trying to signal someone. He observed that the defendant acted in a nervous manner. Officer Brock allowed defendant Lange to remain in his car while he drove around the immediate premises. He then observed defendant Marland and had a right to speak to him. When defendant Marland attempted to flee on foot, officer Brock had a right to deduce that exigent circumstances existed in that he was a lone officer who needed to exercise some control while he analyzed contradictory explanations provided by the defendants. Thus he was entitled to place in the patrol car one defendant who had just attempted to flee while he in turn talked to the other defendant. When the other defendant contradicted the person just put in the patrol car, the officer then had a right to place both defendants into the patrol car. As stated by Professor LaFave and cited in the *Summers* decision, the officer had a right to make an effort to verify the explanation tendered. He checked the immediate premises and removed neither of the defendants from the immediate area. Our present case is easily distinguished from *Bloyd* in that, unlike in *Bloyd,* there was no transportation involved in our present case. As stated in *Summers,* and again in *Bloyd, supra,* p 553:

"[I]t is important to focus upon the law enforcement interest and the nature of 'articulable facts' supporting the particular detention when assessing the justification for an intrusion. These law enforcement interests include (1) preventing flight, (2) minimizing the risk of harm to an officer, and (3) facilitating an orderly completion of a search."

Certainly items 1 and 3 apply to our present case. There was no undue delay in the present case in

that the officer immediately radioed for assistance, assistance arrived rapidly, and, once the defendants were placed under observation, officer Brock was then able to follow the footprints to the scene of a nearby residence where substantial evidence of a breaking and entering was discovered. In conclusion we find that the transcript of the defendants' conversation was not the fruit of an illegal arrest.

Next defendants argue that reversible error occurred because no search warrant was obtained before recording the conversation. In addition it may be argued that the defendants were not given any *Miranda* warnings. On appeal defendants argue that they were alone in the cruiser, that the windows were rolled up, and that the doors were closed, thus justifying their expectation that any conversation would be private. No Michigan case has addressed the issue under similar factual circumstances. Two recent California cases, however, have held that such recordings, made surreptitiously after defendants had been validly arrested and placed in police cruisers, were properly admissible into evidence. In *People v Crowson,* 124 Cal App 3d 198; 177 Cal Rptr 352 (1981), the court held that there can be no reasonable expectation of privacy in the back seat of a police car. That holding was reaffirmed in the subsequent case of *People v Williams,* 128 Cal App 3d 981; 180 Cal Rptr 734 (1982). In *Williams,* the court stated that "an individual's expectation of privacy must be objectively reasonable before he can complain of any intrusion". *Williams,* p 987. Further, the *Williams* case cites a 1974 California case to the same effect, thus showing that the California position has withstood the test of time for almost a decade. See *People v Newton,* 42 Cal App 3d 292; 116 Cal

Rptr 690 (1974). In our present case it is significant that the defendants, by their own taped conversation, have shown they did not completely entertain an expectation of privacy for the reason that on page 9 of the tape transcript defendant Marland observes that the police radio could be hooked up. Again on page 19 defendant Marland observes that the police radio could be hooked up. Nevertheless they continued to talk in both instances even though they had alerted themselves to the possibility that their conversation might be overheard. On March 24, 1983, the Supreme Court of California upheld the Court of Appeals decision, affirming that defendant Crowson did not have a reasonable right to expect privacy in the back seat of a police car. *People v Crowson,* 33 Cal 3d 623; 190 Cal Rptr 165; 660 P2d 389 (1983).

We find no violation of defendants' Fifth Amendment right against self-incrimination or Sixth Amendment right of confrontation. Specifically, there was no interrogation by the officers involved in the case. The single question asked by the police did not produce an incriminating response by either defendant. Further, the statements of both defendants were clearly admissible against each other pursuant to *People v Shepherd,* 63 Mich App 316, 322; 234 NW2d 502 (1975), which states as follows:

"It is well settled that admissions and statements of a codefendant are admissible against another defendant if there exists a concert of action between the defendants, and the statements are made while the common scheme or plan is still in effect, *People v Trilck,* 374 Mich 118; 132 NW2d 134 (1965), *People v Adams,* 48 Mich App 595; 210 NW2d 888 (1973)."

Defendant Marland alleges that the trial court's

instructions improperly suggested to the jury that acquittal on the charged crime must be unanimous before consideration could be given to the lesser offenses. *People v Mays,* 407 Mich 619; 288 NW2d 207 (1980). Defense counsel, however, failed to object to the instruction challenged on appeal, and, in fact, indicated satisfaction with the instructions as given. In *People v Handley,* 415 Mich 356; 329 NW2d 710 (1982), the Michigan Supreme Court ruled that in trials conducted prior to the release of that decision, failure to object to an allegedly coercive instruction such as the type prohibited in *People v West,* 408 Mich 332; 291 NW2d 48 (1980), *People v Mays, supra,* and *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976), precludes consideration on appeal. We thus decline to address defendant's argument.

We find no reversible error in the trial court's denying defendant Marland's request for an adjournment of his sentencing. Defendant Marland made no showing that the information contained in his presentence report was misleading or inaccurate.

Next we find that the trial court did not commit reversible error in its denial of defendant Lange's request for an adjournment made on the first day of trial. Defendant Lange requested an adjournment for the reason that he had been furnished the transcript of the incriminating conversation in the back seat of the patrol car only on the first day of trial. GCR 1963, 503 provides in pertinent part:

"It is the policy of this rule to encourage the diligent preparation and trial of cases. Except where the court, within its discretion and to promote the ends of justice, adjourns a cause, continuance of any trial or hearing upon stipulation shall not be granted unless the stipulation is made in writing or made orally only in open

court and is based upon good cause shown to the satisfaction of the court under all of the circumstances of the case and with a view toward speedy and substantial justice."

The trial court denied defendant's motion for adjournment on the grounds that the defense had not requested a transcript of the suppression motion on the day that the motion was heard. The motion was heard approximately one week prior to trial. We find no abuse of discretion by the trial court in that both defendants were furnished a copy of the tape transcript the day of trial. The time between the hearing and the commencement of trial was short, thus there was no lack of diligence by the court reporter. Further, defendants made no showing of actual prejudice. Both defendants were familiar with the general contents of the tape in that they had listened to it one week earlier. Thus, absent a showing of actual prejudice, we find no reversible error. See *People v Wilson,* 397 Mich 76; 243 NW2d 257 (1976).

We find no reversible error in the trial court's having admitted into evidence the statement by defendant Marland that defendant Lange was "his ride" to the store. There was no objection at trial by defendant Lange. We find no manifest injustice in that the evidence described on appeal was not decisive. Specifically, the defendants would have been convicted based on the admitted tape of their incriminating statements while in the back of the patrol car. Thus the reference to the ride was nothing more than an innocuous statement to the officer. Further, it would be allowable as justification for the officer's course of action in investigating the situation. We affirm defendants' convictions.

Affirmed.