PEOPLE v GRUNBAUM

Docket No. 92627. Submitted May 7, 1987, at Lansing. Decided September 6, 1988. Leave to appeal applied for.

Victor Grunbaum was convicted of delivery of cocaine following a jury trial in Oakland Circuit Court and was sentenced, David F. Breck, J. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in ruling that a res gestae witness was unavailable for trial and in refusing to instruct the jury that the witness' testimony should be presumed favorable to defendant where the witness was a fugitive and was presumed by the authorities to be in another state.

2. Testimony corroborating that of the officer in charge of the case regarding the delivery of the cocaine involved information gained through an illegal search and seizure, the electronic transmission of conversation without first having obtained a valid search warrant. Defendant's conviction must be reversed because the testimony at issue was the product of an illegal search and seizure and was particularly critical to the jury's resolution of the credibility issues presented.

3. Testimony of a Farmington Hills police officer did not violate the trial court's pretrial order suppressing any reference to a prior cocaine purchase from defendant by undercover officers.

4. Although rebuttal testimony by the officer in charge was improperly admitted, reversal is not required on this issue. The substantive information obtained on rebuttal was relatively

REFERENCES

Am Jur 2d, Criminal Law §§ 525 *et seq.*

Am Jur 2d, Searches and Seizures §§ 24, 30, 31.

Am Jur 2d, Trial §§ 767 *et seq.*

Obtaining evidence by use of sound recording or of mechanical or electronic eavesdropping device ("bugging") as violation of Fourth Amendment-federal cases. 59 L Ed 2d 959.

Permissible warrantless surveillance, under state communications interception statute, by state or local law enforcement officer or one acting in concert with officer. 27 ALR4th 449.

harmless, so that the error in its admission did not result in a miscarriage of justice.

5. Defendant is not entitled to resentencing on the basis that the trial court failed to articulate its reasons on the record for exceeding the disposition recommended by the probation department in its presentence report. The court is not bound to consider sentences recommended by the probation department, and the sentence imposed does not shock the judicial conscience.

Reversed.

WEAVER, P.J., dissented. She would hold that the testimony which should have been excluded because it was the product of an illegal search and seizure was not particularly critical to the jury's resolution of the credibility issues presented and that its exclusion probably would not have meant defendant's acquittal. She would affirm defendant's conviction on the basis that the evidence was sufficient without the erroneously admitted testimony for a jury to find defendant guilty beyond a reasonable doubt.

1. CRIMINAL LAW — TRIAL — RES GESTAE WITNESSES — FUGITIVES.

It is not error for a trial court to rule that a res gestae witness who is a fugitive and is presumed by the authorities to have left the state is unavailable for trial and to refuse to instruct the jury that the witness' testimony should be presumed favorable to the defendant.

2. SEARCHES AND SEIZURES — WARRANTS — PARTICIPANT MONITORING.

The institution of a participant monitoring procedure where a police officer monitors a conversation between a defendant and another person who is equipped with a concealed radio transmitter constitutes an illegal search and seizure where a valid search warrant is not first obtained.

3. CRIMINAL LAW — SENTENCING RECOMMENDATIONS.

A trial court is not bound to consider a sentence recommendation by the probation department when sentencing a defendant and need not explain its departure from the sentence recommended; it is only where the trial court exceeds the sentences recommended in the sentencing guidelines that it must articulate on the record its reasons for imposing a sentence which exceeds that which is recommended.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief,

Appellate Division, and *Mary McCarthy Quarles,* Assistant Prosecuting Attorney, for the people.

*Ralph Musilli* and *Domnick J. Sorise,* for defendant.

Before: WEAVER, P.J., and KELLY and J. R. KIRWAN,* JJ.

J. R. KIRWAN, J. Defendant appeals as of right from a jury conviction of delivery of cocaine, MCL 333.7401(1), (2)(a)(iv); MSA 14.15(7401)(1), (2)(a)(iv). He was sentenced on April 24, 1986, to a two-year term of probation, with the first year to be served in the county jail under a work-release program. Defendant was also required to pay costs of $400 and restitution of $430. We reverse.

Defendant's conviction arises out of an incident that occurred in June of 1985. According to police witnesses, defendant sold 2.79 grams of thirty-six percent pure cocaine to a police informant while the informant was cooperating with and under the surveillance of the Michigan State Police Narcotics Enforcement Team (NET). The informant, Keith Thornton, who was paid $50 for his services, had been recommended by the Ferndale Police Department. Members of the NET team used the informant on the basis of this recommendation and made no further inquiries into Thornton's background or prior criminal record. Although Thornton was the individual to whom defendant sold the cocaine, Thornton did not appear at trial and defendant's conviction was instead based on the testimony of the officer in charge of the case, Oakland County Deputy Sheriff Joseph Quisenberry.

Defendant first argues that reversal is required

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

because the prosecution failed to exercise due diligence in attempting to produce Keith Thornton for trial. According to defendant, the prosecutor's efforts in this case mirror the efforts made in *People v Schwartz,* a companion case to *People v Pearson,* 404 Mich 698; 273 NW2d 856 (1979), where the Supreme Court found lack of due diligence and therefore reversed the defendant's conviction because of the trial court's failure to appropriately instruct the jury with regard to the missing res gestae witness. We do not agree with defendant's analysis of the facts in both cases.

According to testimony produced at the *Pearson* hearing conducted immediately prior to trial, Thornton had been charged in a separate and unrelated case with the crime of larceny over $100. A bench warrant for his arrest had been issued in that case in August of 1985, two months after the incident in question here. That warrant was still outstanding when this case went to trial and the authorities believed that Thornton had absconded to another state. Under the circumstances, we cannot say that the trial court abused its discretion, *People v Baskin,* 145 Mich App 526, 534; 378 NW2d 535 (1985); *People v McShan,* 120 Mich App 496, 501-502; 327 NW2d 509 (1982), in ruling that Thornton was unavailable for trial and in refusing to instruct the jury that Thornton's testimony should be presumed favorable to the defendant.

However, Thornton's failure to appear at trial created another difficulty in the prosecution of this case. Because Thornton did not testify, the jury was presented with a classic credibility contest between defendant and Deputy Quisenberry regarding a conversation between the two men inside defendant's jewelry store. Quisenberry testified that on June 20, 1985, he drove informant

Thornton to defendant's store and waited in the car outside while Thornton entered and completed the buy. Thornton had been searched for money and narcotics prior to entering Quisenberry's car and none were found. Although Quisenberry testified that he was able to continuously observe Thornton and defendant through a street window, he did not observe anything pass between them. Upon Thornton's return to the car, however, Thornton possessed a small paper package containing a substance subsequently identified as cocaine.

After handing the package over to Quisenberry, Thornton reentered defendant's store accompanied by Deputy Quisenberry to discuss price. Quisenberry had been electronically wired for radio transmittal and his conversation with defendant in the store was monitored by other members of the NET team. Although Quisenberry had been instructed by Thornton that defendant did not allow the use of the word "cocaine" in his store, Quisenberry testified that he referred to cocaine when he discussed with defendant a purchase price of $330. Two other members of the NET team testified at trial, corroborating some portions of Deputy Quisenberry's testimony regarding his conversation with defendant. Both of these witnesses specifically testified that Quisenberry and defendant discussed cocaine.

Defendant, however, testified that his discussion with Quisenberry on June 20, 1985, was limited to the quality and purchase price of his jewelry. According to defendant, Thornton regularly sold jewelry for defendant on consignment and defendant believed that Quisenberry was referring to the purchase price of a Seiko watch in Thornton's possession when they discussed the figure of $330. Defendant further testified that when Thornton initially entered the store, defendant was working

in a back room. Thornton began talking about the Seiko watch at that time. Furthermore, Thornton kept a personal file in defendant's file cabinet in the back of the store and he may have gone to the file during that visit.

There is no evidence in this record to show that Quisenberry had obtained a valid search warrant prior to electronically transmitting his conversation with defendant. See *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), cert den 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 (1975). Defendant argues for the first time on appeal that the testimony of the two members of the NET team who had monitored Quisenberry's conversation with defendant should have been excluded because it was based on an illegal search and seizure. We agree.

Although defendant failed to preserve this issue by first raising it below, we nevertheless hold that reversal is required because the error is of constitutional magnitude and admission of the testimony may have been decisive to the outcome of the case. *People v Marland,* 135 Mich App 297, 302; 355 NW2d 378 (1984), lv den 422 Mich 969 (1985). We further note defendant's claim that defendant first learned of the electronic wiring during the prosecutor's opening argument at trial. If this is true, trial counsel had no opportunity to raise the issue prior to trial.

Without the corroborating testimony of the two NET officers, the jury would have been presented with a conflict in testimony between two witnesses, Deputy Quisenberry and defendant. Since Deputy Quisenberry's testimony regarding the events which occurred on June 20, 1985, is in significant part based on the account of an unreliable informant with a prior criminal record, the admission of the corroborating testimony was particularly

critical to the jury's resolution of the credibility issues presented. Both witnesses expressly testified that Quisenberry and defendant engaged in a discussion regarding the quality and purchase price of cocaine. In the absence of this testimony, the jury may have been unwilling to conclude beyond a reasonable doubt that defendant was referring to cocaine during the course of his conversation with Quisenberry. Since the corroborating testimony was the result of an illegal search and seizure, we find that defendant's conviction must be reversed on this basis.

None of the remaining issues raised by defendant on appeal require reversal.

Farmington Hills Police Officer Patrick Monti's testimony did not violate the trial court's pretrial order suppressing any reference to a prior cocaine purchase from defendant by undercover officers. Defendant objects to Officer Monti's testimony describing a police practice generally used in the course of an undercover narcotics operation. According to Officer Monti, undercover officers generally attempt to complete a direct purchase without the use of an informant after an informant is used to make an introductory buy. Officer Monti did not inform the jury of any other specific purchase from defendant, however, and other testimony revealed that Deputy Quisenberry's attempts to purchase cocaine from defendant after June 20, 1985, had been unsuccessful.

Although we agree that Deputy Quisenberry's rebuttal testimony was improperly admitted as duplicative, unresponsive to defendant's evidence, or relative only to collateral matters, we do not think reversal is required on this issue. The substantive information obtained from Deputy Quisenberry on rebuttal was relatively harmless so that the error in its admission did not result in a

miscarriage of justice. *People v Eggleston,* 148
Mich App 494, 503; 384 NW2d 811 (1986).

Finally, defendant argues that he is entitled to
resentencing because the trial court failed to artic-
ulate on the record its reasons for exceeding the
disposition recommended by the probation depart-
ment in its presentence investigation report. It is
undisputed that the probation department recom-
mended a one-year term of probation with the first
six months to be served in the Oakland County
Jail.

Contrary to defendant's argument on appeal, the
principles of sentence review announced in *People
v Coles,* 417 Mich 523; 339 NW2d 440 (1983), and
its progeny do not require a trial court to explain
its departure from the sentence recommended by
the probation department in a presentence investi-
gation report. The trial court is bound only to
consider the sentence recommended under the
sentencing guidelines, and if the minimum sen-
tence imposed is within the minimum sentence
range under those guidelines, the trial court need
only cite the guidelines in explaining its sentence.
See *People v Broden,* 428 Mich 343; 408 NW2d 789
(1987). Where the trial court elects to exceed the
guidelines, articulation on the record is necessary.
These articulation requirements do not apply
where the sentencing court departs from the par-
ticular sentence recommended by an investigator
from the probation department.

In this case, we have not been provided with a
copy of the Sentencing Information Report pre-
pared for defendant, nor does defendant indicate
on appeal the minimum sentence range computed
under the sentencing guidelines. According to the
prosecutor, however, defendant's recommended
minimum sentence range was from six to twelve
months. In any event, our consciences are not in

any way shocked by the imposition of a two-year term of probation for the conviction obtained in this case. In the event that further appellate proceedings result in the reinstatement of defendant's conviction, we see no need to remand for further sentencing proceedings.

Reversed.

KELLY, J., concurred.

WEAVER, P.J. *(dissenting).* I dissent. While I agree with the majority that the testimony of the two members of the NET team who had monitored Deputy Quisenberry's conversation with defendant should have been excluded because it was based on an illegal search and seizure (see *People v Beavers,* 393 Mich 554; 227 NW2d 511 [1975], cert den 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 [1975]), I do not agree that said testimony was particularly critical to the jury's resolution of the credibility issues presented.

The key issue was the jury's resolution of the conflict in the testimony between the defendant and Quisenberry. While there is no question that the erroneously admitted corroborating testimony bolsters the credibility of Quisenberry, I believe that the majority gives said cumulative testimony too much weight in deciding that its inclusion was decisive to the jury's finding the defendant guilty. There were other factors for the jurors to weigh in determining the credibility of Quisenberry and the defendant, such as the undisputed fact that the package delivered by informant Thornton to Quisenberry proved to be cocaine and the undisputed fact that money ($330) was exchanged between Quisenberry and the defendant, of which a certain amount was returned to Thornton. Further, there were the carefully outlined and executed plans

and procedures of the cocaine purchase which included a patdown search of Thornton immediately before going to the jewelry store and Quisenberry's continual accompanying or observation of Thornton from the time of the patdown through the completion of the purchase.[1] These facts favor the jury's resolving the issue of credibility in favor of Quisenberry independently of the erroneously admitted testimony of the NET team.

Thus the erroneously admitted testimony was not decisive to the jury's finding defendant guilty. Its exclusion probably would not have meant defendant's acquittal. *People v Marland,* 135 Mich App 297, 302; 355 NW2d 378 (1984), lv den 422 Mich 969 (1985), and *People v Flores,* 92 Mich App 130; 284 NW2d 510 (1979). The evidence was sufficient without the erroneously admitted testimony for a jury to find defendant guilty beyond a reasonable doubt. I would affirm.

---

[1] Quisenberry testified that, after Thornton got out of the car and went into the store to talk to defendant, he continuously watched Thornton until Thornton returned to the car with the small paper packet of cocaine. Yet Quisenberry also testified he did not see anything pass between defendant and Thornton. This apparent inconsistency does not diminish Quisenberry's credibility, but actually enhances the conclusion that he was testifying truthfully even when a particular statement of his testimony did not help his case against the defendant. The conclusion follows that if Quisenberry was making up the cocaine purchase story, as the defendant wished the jury to believe, it would have been easy and logical for him to remain consistent in his lying and say he saw the transfer between defendant and Thornton.