STATE of Tennessee, Appellee,

v.

**Thomas M. MORGAN and William C. Tilson, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 20, 1996.

No Permission to Appeal Applied for to the Supreme Court.

Mack Garner, District Public Defender, Maryville, for appellants.

Charles W. Burson, Attorney General, Ruth A. Thompson, Assistant Attorney General, Nashville, Mike Flynn, District Attorney General, Philip H. Morton, Asst. Dist. Attorney General, Maryville, for appellee.

## OPINION

HAYES, Judge.

The appellants, Thomas M. Morgan and William C. Tilson, appeal from convictions for the offenses of burglary, a class D felony, and possession of burglary tools, a class A misdemeanor, entered by the Circuit Court of Blount County. The appellants received sentences of twelve years for the burglary and concurrent sentences of eleven months and twenty-nine days for possession of the burglary tools. Morgan and Tilson challenge the sufficiency of the evidence introduced in support of their convictions and the admissibility of a recorded conversation between the appellants. Morgan also disputes his sentencing as a career offender.

After reviewing the record, we affirm the convictions of both appellants. However, we

vacate Morgan's sentence and remand his case for resentencing.

### FACTUAL BACKGROUND

On January 6, 1992, at approximately 2:45 a.m., Randall Glass, an employee of Shore Trucking, heard the burglar alarm activate at Big Jim's Citgo. The service station is located across the street from the trucking company, on Highway 411 in Blount County. Glass noticed that, although there were no cars or people around the service station, the door to the building was open. He called 911 and reported the alarm.

On the same morning, at approximately 3:00 or 3:15 a.m., Joe Thornhill, the Chief of Police of Friendsville, was standing outside a market located on Highway 321 in Blount County, roughly four miles from the Citgo Station. Thornhill was talking to Deputy Maples, an officer with the Blount County Sheriff's Department. At this time, Thornhill and Maples observed a vehicle on the highway pass the market and then complete a U-turn. "Within a couple or three minutes," the same vehicle again passed the market and again executed a U-turn.

Thornhill was aware that several markets in the area had been burglarized. Therefore, given the time of morning and the location of the U-turns, he and Maples decided to follow the car. The officers soon came upon the car, parked beside the road, with the lights off and the engine running. As the officers approached the car, they observed two occupants. Maples saw the passenger, Morgan, pull a bandana away from his face. Thornhill noticed a bumper jack between Morgan's legs, similar to one thrown through a store front window at a recent market burglary. The officers also noticed numerous "tire tools" in the appellants' vehicle. When asked, Tilson, the driver of the car, informed the officers that he and Morgan were lost.

At this point, Thornhill and Maples were also aware of a possible burglary of Big Jim's Citgo. The officers asked Morgan and Tilson to exit the vehicle, and Maples obtained Tilson's consent to search the car. This search and a subsequent, more thorough, search pursuant to a warrant uncovered one pair of black gloves, one pair of brown work gloves, yet another pair of gloves with $15.75 in quarters in the left glove, a blue jacket, three flashlights, three pairs of wire cutters, two pairs of pliers, one screwdriver, three tire tools, one bumper jack, one garbage bag, and various other items. Of particular note was a tire tool, which apparently had been heated and then bent at the tip. The tip had also been sharpened. According to the crime scene technician, tire tools altered in this fashion are commonly used in burglaries.

At trial, Richard Buechele, a special agent assigned to the Materials Analysis Unit of the Federal Bureau of Investigation Crime Laboratory, testified that he compared the paint found on two of the tire tools, including the modified tire tool, with samples of paint from the door and door jamb at Big Jim's Citgo. He concluded that the paint on the tire tools "could have originated from these sources." Specifically, there were layers of blue and white enamel paint on one tire tool and white enamel paint on the other tire tool that corresponded with the layers of paint on the door and door jamb at the service station.

During the initial search, the appellants sat in the back seat of Deputy Maple's police cruiser. They remained in the police cruiser for approximately forty-five minutes. Unknown to the appellants, a tape recorder was operating in the police car and recorded the conversation between the appellants, during which they made several incriminating remarks. At trial, the tape was played for the jury. Deputy Maples identified the voices as those of the appellants.

Following the initial search of the appellant's automobile, Maples and Thornhill arrested the appellants and transported them to the jail. A search of the appellants at the jail revealed that Morgan had $270.51 in his possession and Tilson had $230.40 in his possession.

Jim McBrayer, the owner of Big Jim's Citgo, testified at trial that, on the morning of January 6, 1992, he was called at home and informed that his business had been burglarized. When he arrived at the station, he noticed that someone had forced the door open and had also broken into an amusement device inside the store. McBrayer was un-

certain how much money was taken from the device, but he knew that, before the burglary, it had contained a large number of bills and approximately $15.00 in quarters.

The appellants presented no proof at trial. Accordingly, the jury found the appellants guilty of burglary and possession of burglary tools.

### SUFFICIENCY OF THE EVIDENCE

■ The appellants first challenge the sufficiency of the evidence to sustain their convictions for burglary and possession of burglary tools. A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). The defendant must establish that the evidence presented at trial was so deficient that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); Tenn.R.App.P. 13(e).

■ Moreover, an appellate court may neither reweigh nor reevaluate the evidence when determining its sufficiency. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). "A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory." *State v. Williams,* 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id. See also State v. Harris,* 839 S.W.2d 54, 75 (Tenn.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

■ A burglary occurs if a person, without the effective consent of the property owner, "[e]nters a building other than a habitation ... not open to the public, with intent to commit a felony or theft." Tenn.Code Ann. § 39-14-402(a)(1) (1991). Possession of burglary tools requires possession of "any tool, machine or implement with intent to use the same, or allow the same to be used, to commit any burglary." Tenn.Code Ann. § 39-14-701 (1991). We conclude that the record contains ample, indeed overwhelming, evidence in support of the jury's verdicts. This issue is without merit.

### ADMISSIBILITY OF THE TAPED CONVERSATION BETWEEN THE APPELLANTS

■ The appellants next contend that the trial court erred in permitting the introduction of a tape recording of the appellant's conversation in the police cruiser. The appellants argue that the tape recording violated their right, under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 7 of the Tennessee Constitution, to be free from unreasonable searches and seizures.[1]

---

1. The appellants also urge us to broadly construe Tenn.Code Ann. § 39-14-411 (1991) and Tenn.Code Ann. § 65-21-110 (1993) to prohibit the recording of *any* conversation without the consent of a party to the conversation and, therefore, the introduction into evidence of any such recording. Clearly, these statutory provisions are inapplicable to the case before us. Moreover, we note that the relevant federal statute only prohibits the recording of an oral communication without consent when the communication is "uttered by a person exhibiting an expectation that [the] communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C.S. § 2510(2) (Law.Co-op.1993). *See also* 18 U.S.C.A. § 2511 (Law.Co-op.1993 & Supp.1995). In other words, an oral communication under the federal statute must be inter-

preted in light of the constitutional standards set forth in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *See United States v. McKinnon,* 985 F.2d 525, 527 (11th Cir.), *cert. denied,* 510 U.S. 843, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993) (under the federal statute, denial of motion to suppress recording of defendant's pre-arrest conversations, which occurred while he was seated in the back of a police car, was proper since he did not have a reasonable expectation of privacy); *State v. Williams,* 690 S.W.2d 517, 523-524 (Tenn.1985) (under the federal statute, denial of motion to suppress recording of defendant's post-arrest conversation, which occurred in the defendant's jail cell, was proper since he did not have an actual or reasonable expectation of privacy). We subsequently

Application of the Fourth Amendment and the corresponding provision of the Tennessee Constitution depends on whether the appellants had a subjective expectation or desire for privacy, with respect to their conversation in the back seat area of a police car, and whether that expectation was reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Katz,* 389 U.S. at 352–353, 360, 88 S.Ct. at 511–512, 516; *State v. Roode,* 643 S.W.2d 651, 652–653 (Tenn.1982); *State v. Bowling,* 867 S.W.2d 338, 340–341 (Tenn.Crim.App. 1993). We conclude that any expectation of privacy under the circumstances of this case was unreasonable. *See McKinnon,* 985 F.2d at 528; *People v. Crowson,* 33 Cal.3d 623, 190 Cal.Rptr. 165, 168–169, 660 P.2d 389, 392–393 (1983) (arrested suspect did not have a reasonable expectation that he could conduct a private conversation with an accomplice in the back seat of a police car, even though the two had been left alone); *State v. Smith,* 641 So.2d 849, 852 (Fla.1994) (a motorist, placed in the back seat of a police car for safety purposes during a consensual search of his vehicle, had no reasonable expectation of privacy); *State v. Hussey,* 469 So.2d 346, 350–351 (La.App.1985) (companions of arrestee had no reasonable expectation of privacy while conversing in the back seat of a police car); *People v. Marland,* 135 Mich.App. 297, 355 N.W.2d 378, 383–384 (1984) (detainees, not under formal arrest, had no reasonable expectation of privacy in the back seat of a police car); *State v. Wischnofske,* 129 Or. App. 231, 878 P.2d 1130, 1133–1134 (1994) (arrestee had no reasonable expectation of privacy in the back seat of a police car). Moreover, we do not find it significant that the appellants were not under arrest at the time of the recorded conversation. *McKinnon,* 985 F.2d at 528 (finding no persuasive distinction between pre-arrest and post-arrest situations in that case). This issue has no merit.

### MORGAN'S SENTENCE

■ Finally, the appellant Morgan argues that his sentencing as a career offender was erroneous because the trial court improperly

conclude that the appellants in this case had no reasonable expectation of privacy in the police

denied his motion for a continuance when the State failed to provide proper notice of enhanced punishment. Thus, the appellant contends that his case should be remanded for resentencing. We agree.

Tenn.Code Ann. § 40–35–202(a) (1990) provides, in pertinent part, "If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, he shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea...." The record reflects that the State filed a notice of intent to seek enhanced punishment of the appellant as a career offender on September 8, 1993. The appellant's trial was scheduled to proceed on September 10, 1993. Therefore, based on the State's late filing of its notice of enhancement, the appellant moved for a continuance. The trial court denied the appellant's motion.

The appellant correctly argues that Rule 12.3(a) of the Tennessee Rules of Criminal Procedure provides that, if the notice required by Tenn.Code Ann. § 40–35–202(a) is filed within the ten day period, "the trial judge *shall* grant the defendant upon his motion a reasonable continuance of the trial." Moreover, in *State v. Lowe,* 811 S.W.2d 526, 527 (Tenn.1991), in a factual situation analogous to the case before us, our supreme court held that "when faced with such a motion for continuance, the trial judge must either strike the notice of enhancement and proceed to trial, or grant a continuance of at least ten days from the date of the entry of the court order resetting the case for trial." The court further observed that, because the trial judge refused to sustain the defendant's motion for a continuance, it was required, pursuant to Tenn.R.Crim.P. 12.3(a), to strike the notice of enhancement. *Id.* Finally, the State concedes that, under the authority of *Lowe,* the appellant Morgan is entitled to a new sentencing hearing.

### CONCLUSION

Accordingly, the appellants' convictions are affirmed. For the reasons stated, we vacate

cruiser.

the appellant Morgan's career offender sentence and remand his case to the trial court for resentencing within range I.

JERRY SCOTT, P.J., not participating.

PENNY J. WHITE, J., concur