STATE of Texas, Appellant,

v.

Jose "Joe" Angel TREVINO, Appellee.

No. 04–00–00580–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 19, 2001.

E. Bruce Curry, Dist. Atty., Kerrville, for appellant.

Steven J. Pickell, Kerrville, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, and PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

The State of Texas ("State") appeals the trial court's order granting the motion to suppress filed by appellant, Jose "Joe" Angel Trevino ("Trevino"). This panel previously addressed the same issue raised by the State in *State v. Scheineman*, 47 S.W.3d 754 (Tex.App.—San Antonio 2001, pet. filed). For the reasons expressed in our opinion in *Scheineman*, the trial court's order is affirmed.

### BACKGROUND

Trevino and Michael Scheineman were taken into custody for questioning regarding an attempted burglary. They were initially placed in separate rooms. Trevino asked to speak alone with Scheineman be-

fore speaking further with authorities.[1] A sheriff's deputy brought Scheineman into the room with Trevino and left them alone. Trevino and Scheineman proceeded to discuss the attempted burglary, making inculpatory statements. Neither Trevino nor Scheineman knew that the conversation was being monitored or recorded. The room did not contain any indication that a microphone or camera was in the room. Several minutes into their conversation, they noticed someone moving behind a mirror located on a wall in the room and became aware that their conversation was being monitored. They immediately stopped talking.

Trevino was indicted for attempted burglary and filed a motion to suppress the statements recorded by the State, asserting that they were obtained through the use of an unlawful recording and interception of an oral communication. After a hearing, the trial court granted the motion to suppress, and the State appealed. The parties submitted an agreed statement of the case in lieu of a reporter's record.

### DISCUSSION

■ The State contends that Trevino did not have standing to challenge the admission of the recorded statements because he did not have a legitimate expectation of privacy in the room. In order to prove that he had a legitimate expectation of privacy, Trevino was required to show: "(a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expec-

tation as objectively reasonable." *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). In reviewing a trial court's ruling on a motion to suppress, we afford deference to the trial court's determination of the historical facts, but we decide *de novo* whether the trial court erred in misapplying the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997).

■ The record supports the trial court's finding that Trevino had a subjective expectation of privacy, and we afford deference to that finding. *See id.* However, we must decide *de novo* whether Trevino's subjective expectation of privacy is one that society is prepared to recognize as reasonable, because that question is a question of law. *See Villarreal*, 935 S.W.2d at 138 n. 5.

In *Scheineman*, we concluded that Scheineman's subjective expectation of privacy was objectively reasonable by societal standards, reasoning:

We agree with the State that under normal circumstances society is not prepared to recognize as reasonable an arrestee's subjective expectation of privacy with regard to conversations that occur in the back of a police car or in a jail or prison. *See Hudson v. Palmer*, 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *United States v. Harrelson*, 754 F.2d 1153, 1168–71 (5th Cir.1985); Op. Tex. Att'y Gen. No. JC–0208 (2000). However, the circumstances in this case go beyond mere secret recording in a place that the general public has no reason to believe would be a sanctuary for private discussions. In this case, the deputy created a situation in which

---

**1.** Trevino states in the stipulation of evidence that he requested to talk alone with Scheineman "[r]ather than talk to the deputy." While Trevino may not have used the magic words "I am invoking my right to silence and right to counsel," his intent is clear. Trevino was at least invoking his right to silence until after his private conversation with Scheineman.

Scheineman and Trevino were led to expect privacy by the deputy granting Trevino's request that he be permitted to speak with Scheineman alone. Society does not condone dishonesty. For this reason, society should not sanction the use of deliberate misrepresentations to enable law enforcement authorities to gather possible incriminating evidence. *See State v. Calhoun,* 479 So.2d 241, 243 (Fla.Dist.Ct.App.1985) (affirming trial court's suppression of statements made in interview room where police officers deliberately fostered expectation of privacy by complying with appellant's request to speak with brother privately, bringing brother into room and exiting); *North v. Superior Court,* 8 Cal.3d 301, 311–312, 502 P.2d 1305, 1311–1312, 104 Cal.Rptr. 833, 839–840 (Cal.1972) (holding expectation of privacy fostered where officer permitted suspect and wife to use his private office), *overruled by statute, De Lancie v. Superior Court,* 31 Cal.3d 865, 647 P.2d 142, 183 Cal.Rptr. 866 (Cal.1982) (statute only permits recording of detainee or prisoner's conversation for safeguarding institutional security or protecting public but prohibits recording for purpose of gathering evidence). No evidence was presented in this case that the recording was conducted pursuant to a policy for security reasons rather than for purposes of gathering evidence. *Compare United States v. Hearst,* 563 F.2d 1331, 1344 (9th Cir.1977) (evidence presented that monitoring and recording were conducted pursuant to established jail policy for security reasons); *State v. Wilkins,* 125 Idaho 215, 868 P.2d 1231, 1237–38 (1994) (recording admissible where dispatcher testified that intercom was routinely on as safety feature). Where a law enforcement official lulls a defendant into believing his conversation with another will be confidential by allowing the defendant to speak privately with the other individual in a separate room but secretly records the conversation solely for purposes of gathering evidence, the defendant's subjective expectation of privacy is objectively reasonable by societal standards.

47 S.W.3d at 756–57.

■ In *Scheineman,* we concluded that "society should not sanction the use of deliberate misrepresentations to enable law enforcement authorities to gather possible incriminating evidence" because "society does not condone dishonesty." 47 S.W.3d at 756. Although one of the cases cited for support in *Scheineman* involves a conversation between spouses, the nature of the relationship between the parties to the conversation is not the determining factor in our analysis. The determining factor is the use of deliberate misrepresentations by law enforcement authorities to secretly record conversations to gather possible incriminating evidence *in the absence of* any evidence that the recording was conducted pursuant to a policy for security reasons. The analysis recognizes that a balancing must be undertaken in determining whether society should recognize a subjective expectation of privacy as objectively reasonable. However, when there is no policy requiring the taping of conversations for security reasons, one side of the balance is empty, while the other side is weighed down by the deliberate dishonesty of the law enforcement officials. If the State had introduced evidence of a policy or justification for recording the conversation in this case for security reasons, we may have reached a different conclusion. But, in view of the record before us, Trevino's subjective expectation of privacy is objectively reasonable by so-

cietal standards.[2]

The trial court's order is affirmed.

Dissenting opinion by PAUL W. GREEN, Justice

GREEN, Justice, dissenting.

I respectfully dissent. Although I joined the majority opinion in *State v. Scheineman*, 47 S.W.3d 754 (Tex.App.— San Antonio 2001, pet. filed), upon further reflection I believe our holding was incorrect. Today, the majority reaffirms the *Scheineman* holding that "where a law enforcement official lulls a defendant into believing his conversation with another will be confidential by allowing the defendant to speak privately with the other individual in a separate room but secretly records the conversation solely for purposes of gathering evidence, the defendant's subjective expectation of privacy is objectively reasonable by societal standards." *Scheineman*, 47 S.W.3d at 757.

I believe the majority's holding is incorrect for two reasons. First, it improperly creates a new *per se* rule providing that a criminal suspect's subjective belief that his police interrogation room conversation is private becomes a reasonable and justifiable privacy right if actions by law enforcement officials further the suspect's belief. Second, assuming the propriety of this new *per se* rule, the record evidence does not support the majority's conclusions that Kerr County law enforcement officials "deliberately fostered" an expectation of privacy or that the recording took place "solely for purposes of gathering evidence."

*Per Se Rule*

In the majority's new *per se* rule, "[t]he determining factor is the use of deliberate misrepresentations by law enforcement authorities to secretly record conversations to gather possible incriminating evidence *in the absence of* any evidence that the recording was conducted pursuant to a policy for security reasons." The argument that police action can create a privacy right is misplaced and unsupported by precedent. Courts considering what expectations of privacy society is willing to recognize for criminal suspects focus on *where* the communications took place, rather than on the *actions taken by law enforcement officials*.[1]

---

**2.** The dissent contends that the majority opinion crafts a new *per se* rule and that the record evidence does not support the majority's conclusion. This contention wholly ignores that the majority's analysis is based on a balancing test, not a *per se* rule. In addition, the record is devoid of any evidence of a policy or justification for the State's recording of the conversation in this case. As is clear from the existing precedent, the balance would likely weigh heavily in the State's favor if such evidence had been introduced. It simply was not.

**1.** *See United States v. Clark*, 22 F.3d 799, 801–02 (8th Cir.1994); *United States v. McKinnon*, 985 F.2d 525, 527–28 (11th Cir.1993); *State v. Crowson*, 33 Cal.3d 623, 190 Cal.Rptr. 165, 660 P.2d 389, 393 (1983) (stating, "Objectively, [the suspect] surely had no reason to suspect that his conversation with a suspected accomplice in the back of the police car would be afforded any kind of confidentiality"); *People v. Palmer*, 888 P.2d 348, 350 (Colo.App.1994); *Brown v. State*, 349 So.2d 1196, 1197 (Fla.App.1977); *State v. Hussey*, 469 So.2d 346, 351 (La.App.1985); *People v. Marland*, 135 Mich.App. 297, 355 N.W.2d 378, 383–84 (1984); *State v. Lucero*, 96 N.M. 126, 628 P.2d 696, 697 (1981); *K.F. v. State*, 797 P.2d 1006, 1007 (Okla.Crim.App.1990); Op. Tex. Att'y Gen. No. JC–0208 (2000) (stating a police officer who secretly records a conversation of person seated in police vehicle does not violate the state wiretapping provision); *see also Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and ... accordingly, the Fourth Amendment proscription against unreasonable

In *United States v. Clark*, the defendant was a passenger in a car stopped for a traffic violation. *Clark*, 22 F.3d at 801–02. The officer placed the driver in the back seat of his patrol car while conducting a search of the vehicle, and after the Clark requested to sit with the driver in the back of the patrol car during the search, the officer secretly activated the recorder concealed in the patrol car's dashboard. *Id.* at 801. The recorder captured Clark making incriminating statements about the drugs located in the car. *Id.* In finding Clark had no reasonable expectation of privacy in his conversation, the court analogized the police cruiser to a police officer's office:

> A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth, where a person should be able to reasonably expect that his conversation will not be monitored.

*Id.* at 801–02 (citations omitted). The *Clark* court, along with the many others following this rationale, recognize that the investigational nature of a police cruiser prevents a reasonable person from believing his speech is private, regardless of whether the patrol officer's actions furthered the suspect's subjective belief that his conversation was private. *Id.; McKinnon*, 985 F.2d at 528.

Just as police cruisers are vehicles of investigation, so are police interrogation rooms locales of investigation. I agree with the courts applying the "location analysis" to criminal suspect's conversations occurring in police interrogation rooms. *See State v. Hauss*, 142 Ariz. 159, 688 P.2d 1051, 1054–55 (1984) (holding the recording of the defendant's conversation with his girlfriend in an interrogation room did not violate the Fourth Amendment or state and federal wiretapping laws); *Ahmad A. v. Superior Court*, 215 Cal.App.3d 528, 535–36, 263 Cal.Rptr. 747, 751–52 (1989) (holding secret recording of conversation between minor suspect and his mother in interrogation room was admissible) (citing *Lanza v. New York*, 370 U.S. 139, 143–44, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962)).

Other courts have excluded statements surreptitiously recorded in interrogation rooms by law enforcement officials; however, these courts, while taking issue with officials lulling defendants into making incriminating statements, rely on the existence of a privacy right wholly independent of any police action to conclude that society would find the suspect's subjective belief as reasonable and justified. *See, e.g., North v. Superior Court*, 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305, 1311–12 (1972) (excluding tape recording of conversation between husband and wife due, in part, to spousal communication privilege); *State v. Calhoun*, 479 So.2d 241, 242 (Fla. Dist.Ct.App.1985). In essence, these courts found the law enforcement officials had attempted to circumvent the invoked *Miranda* right or applicable communications privilege by recording the criminal suspects.

For example, in *State v. Calhoun*, officials secretly recorded a conversation between the defendant and his brother after the defendant had invoked his *Miranda* rights. *Calhoun*, 479 So.2d at 242. The court affirmed the exclusion of the record-

searches does not apply within the confines of     the prison cell").

ing, and although the opinion suggests the defendant's expectation of privacy arose because the police officers "deliberately fostered" the defendant's subjective belief, the opinion also provides that "perhaps even more significantly ... the defendant specifically exercised his right to remain silent and his right to counsel." *Id.* at 243. The concurring Judge Glickstein emphasized, in agreement with the dissenting Judge Walden, that "[h]ad the suspect in this case not exercised his rights to remain silent and to request counsel, the videotape would have been lawfully obtained evidence." *Id.* at 245–46 (Glickstein, J., concurring).

I have found no case where a court has recognized a privacy right in an investigative locale based solely upon a law enforcement official's "deliberate fostering" of the suspect's subjective expectation of privacy. Rather, the case law has shown the contrary, recognizing that, in investigative locales, the age-old truism still applies: "Walls have ears." CERVANTES, DON QUIXOTE, pt. II [1615], ch. 48. I decline to join the majority in crafting this new *per se* rule based solely upon the actions taken by law enforcement officials. Within the context of criminal suspects in interrogation rooms, privacy rights must exist independent of police action, they do not originate from it. Only when law enforcement officials utilize recordings to circumvent invoked constitutional rights or existing communications privileges should courts consider excluding such evidence.

### Evidence of the Deliberate Fostering of an Expectation of Privacy

Even assuming the propriety of the majority's *per se* rule, I believe the record is insufficient to demonstrate Kerr County officials "deliberately fostered" or made "deliberate misrepresentations" to further Trevino's belief that his conversation was private. I also believe the record is insufficient to demonstrate Kerr County officials conducted the recording solely for the purposes of gathering incriminating evidence. The stipulated evidence shows that a Kerr County deputy brought Scheineman to Trevino's interrogation room after Trevino asked to speak with Scheineman alone. The evidence also demonstrates Trevino waited for the deputy to leave the room before discussing the crime. Further, it shows Kerr County officials recorded the conversation by videotaping Scheineman and Trevino through a two-way mirror. Although this evidence sufficiently demonstrates Trevino had a subjective expectation of privacy, it does not demonstrate Kerr County officials "deliberately fostered" Trevino's belief.

In conclusion, precedent demonstrates that while a police officer's deliberate acts are relevant to prove a criminal suspect's subjective belief of privacy, the existence of other factors, such as an invocation of *Miranda* rights or an applicable communications privilege, are necessary for courts to that hold society recognizes the suspect's subjective belief as reasonable and justified. In this case, the record does not indicate Trevino "clearly and unambiguously" invoked his right to silence or to counsel before asking to speak with his companion in the interrogation room or that his conversation is governed by an applicable communications privilege. *Etheridge v. State,* 903 S.W.2d 1, 18 (Tex. Crim.App.1994). Further, even assuming the adoption of the majority's *per se* rule, the record evidence is insufficient to demonstrate Kerr County officials acted deliberately to foster Trevino's subjective expectation of privacy. Accordingly, I respectfully dissent.