# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2005

## STATE OF TENNESSEE v. KEN CHILDRESS

### Direct Appeal from the Criminal Court for Shelby County
### No. 02-01440    James C. Beasley, Judge

_____

### No. W2004-01170-CCA-R3-CD  - Filed August 31, 2005

_____

The appellant, Ken Childress, was convicted by a jury of attempted first degree murder and aggravated criminal trespass. The trial court sentenced the appellant to an effective sentence of twenty-five (25) years. On appeal, the appellant challenges the sufficiency of the evidence and his sentence as improper in light of the United States Supreme Court's decision in Blakely v. Washington, 542, U.S. 296, 124 S. Ct. 2531 (2004). Because the evidence is sufficient to support the convictions and the Tennessee Supreme Court has determined that Blakely has no effect in Tennessee, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Garland Erguden, Assistant Public Defender, Memphis, Tennessee, for the appellant, Ken Childress.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dennis Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In February of 2002, the Shelby County Grand Jury indicted the appellant on charges of attempted first degree murder and especially aggravated burglary as a result of an incident that occurred on January 6, 2001.

At trial, the victim, Robert McEwen, testified that at the time of the incident, he was living in Memphis and was employed by ADT Security as a Commercial Alarm Installer and Fire Alarm Inspector. The victim also sold clothes that he got from the Merchandise Mart in New York City

to friends and neighbors from his apartment. He was also taking classes at Rust College in Mississippi.

On the afternoon of January 6, 2001, the appellant came to the apartment of the victim around noon and stayed for approximately thirty (30) minutes. The victim was a close friend of the appellant's brother, Ron Childress. At the time, the appellant and the victim had known each other for several months, and the appellant had been to the victim's apartment approximately four (4) or five (5) times. Mr. Childress was at the apartment visiting with the victim when the appellant arrived. The appellant and the victim got into an argument about money. Apparently, the appellant owed the victim money for clothing that the victim had given to the appellant "on credit." The appellant ultimately left the apartment "screaming and cursing" at the victim.

That evening, the victim picked up Ron Childress at his apartment and the two (2) went "running around in the streets" from about 6:00 p.m. until about 9:30 p.m., when the two (2) men went to a club called "Beans," where they shared a forty (40) ounce beer. The victim claimed that he "wasn't feeling well" and thought that he was "tired from [his recent] road trip." He stated that he felt "lightheaded" and wanted to leave.

The men left the club around 11:00 p.m. The victim dropped Mr. Childress off at his apartment and went home to lie on the couch. Sometime between 11:45 p.m. and 12:00 a.m., three (3) masked men broke through the door of his apartment, demanding to know the location of the drugs and money. One of the men was armed with a sawed-off shotgun. The victim testified at trial that he hit the masked man armed with the shotgun and knocked him out. The victim then struggled with the second man, while the third man hit the victim in the back of the head with something. The victim then began struggling with the third man. As the victim fought with the third man, the victim was able to pull off the mask of the assailant. The victim recognized the man as the appellant. There was "no doubt" in the victim's mind as to the identity of the appellant. At that time, the victim claimed that the appellant raised a gun and pointed it at the victim. The victim threw his hand up, the gun went off and the bullet went through the victim's hand. According to the victim, the impact of the shot threw his hand against his head and knocked him out. The victim regained consciousness as the ambulance arrived and rushed him to the hospital. The victim learned on the way to the hospital that he had also been shot five (5) times in the stomach.

The victim testified that, as a result of his injuries, he was in a coma for approximately one (1) month. In total, the victim spent four (4) months in the hospital and had eight (8) surgeries to repair his injuries. While in the hospital, the victim identified the appellant from a photo graphic line-up as his assailant.

The appellant offered two (2) witnesses at trial to challenge the victim's identification of the appellant as the shooter. The defense called Ron Childress, the appellant's brother, as a witness to the events on the day leading up to the incident. Mr. Childress testified that he and the victim went to the bar "Beans" together, but that they left the bar around 8:00 p.m. or 8:30 p.m. rather than 9:00 p.m. or 9:30 p.m. as the victim claimed. Further, Mr. Childress claimed that the two (2) men smoked

marijuana that night and both drank more than one (1) forty (40) ounce beer. Additionally, Mr. Childress testified that after the victim was shot, he called Mr. Childress and claimed that he did not really know what happened on the night of the shooting. According to Mr. Childress, the victim offered not to identify the appellant from a line-up in exchange for a pay-off of two thousand dollars ($2,000). The victim denied these allegations but admitted that he had a prior conviction for felony theft of property and was on probation at the time of the incident.

The defense also attempted to establish an alibi for the appellant through the testimony of Ned Jones. Mr. Jones testified that he lived and worked in Dyersburg, Tennessee, which he described as a being a little more than one (1) hour away from Memphis. Mr. Jones claimed that he was in the company of the appellant on January 6, 2001. Mr. Jones testified that the date stuck out in his memory because it was the date on which he became seriously involved with the woman he later married. Mr. Jones reported that he normally worked from 3:00 p.m. to 11:00 p.m., but that he had gotten off work at 7:00 p.m. that evening so that he could drive to his mother's home in nearby Tiptonville to visit with his uncle and cousins. Mr. Jones testified that, after visiting with his family, he drove back to Dyersburg and went to Willie Tolle's house to pay off a gambling debt. Mr. Jones stated that he ran into the appellant at Mr. Tolle's house that night. Mr. Jones claimed that he and the appellant left Mr. Tolle's house and went to the American Legion, where they stayed until it closed at approximately 2:30 a.m. Mr. Jones also testified that he went back to the appellant's home the next morning before noon and hung out, watching football.

After hearing the evidence, the jury found the appellant guilty of attempted first degree murder and aggravated criminal trespass. After a sentencing hearing, the trial court sentenced the appellant to twenty-five (25) years for the attempted first degree murder conviction and eleven (11) months and twenty-nine (29) days for the aggravated criminal trespass conviction, to be served concurrently for an effective sentence of twenty-five (25) years as a Range I standard offender. The appellant filed a motion for new trial, arguing that the evidence was insufficient to support the verdict. The trial court denied the motion for new trial and the appellant filed a timely notice of appeal. On appeal, the appellant challenges the sufficiency of the evidence and his sentence as improper in light of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004).

Analysis
Sufficiency

On appeal, the appellant argues that the evidence presented at trial was insufficient to support his convictions for attempted first degree murder and aggravated criminal trespass. Specifically, the appellant contends that the convictions "rest solely on the unsupported testimony of [the victim]" and that "when properly viewed . . . the evidence is insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt of attempted first degree murder and aggravated criminal trespass." The State counters that the jury had "ample evidence" from which it could find that the appellant "broke into the apartment, struggled with [the victim], shot him during the struggle, and shot him five times more after [the victim] had fallen unconscious to the floor."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In the case herein, the appellant was convicted of attempted first degree murder and aggravated criminal trespass. First degree murder is defined, in pertinent part, as: "(1) A premeditated and intentional killing of another; [or] (2) A killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy; . . . ." Tenn. Code Ann. § 39-13-202. Criminal attempt is defined as:

> (a)      A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101(a) & (b). A person commits aggravated criminal trespass when that person "enters or remains on property when: (1) The person knows the person does not have the property owner's effective consent to do so; and (2) The person intends, knows, or is reckless about whether such person's presence will cause fear for the safety of another." Tenn. Code Ann. § 39-14-406.

Viewed in a light most favorable to the State, the evidence at trial showed that the victim identified the appellant as the person who broke into his apartment and shot him on the evening of January 6, 2001, in Memphis. The victim testified that three (3) masked men broke into his apartment looking for drugs and money between 11:45 and 12:00 at night. The victim was able to unmask one (1) of the men and identify him as the appellant just before the appellant shot the victim in the hand and five (5) times in the stomach. The victim was later able to identify the appellant in a photo graphic line-up. The defense witnesses offered differing versions of the events. Ron Childress testified that the victim was "high and drunk" on the night of the incident and later admitted to him that he had no idea what transpired that night. Further, Mr. Childress claimed that the victim offered to not identify the appellant as the perpetrator in exchange for two thousand dollars ($2,000). Mr. Jones testified that he was with the appellant in Dyersburg from around 11:00 p.m. to 3:00 a.m. on the night of the shooting.

As noted earlier, this Court is prohibited from re-weighing or reevaluating the evidence. The jury is in the best position to weigh the credibility of the witnesses and determine the weight and value to be given to the evidence. While there was conflicting testimony about the events on the evening of the incident, we determine that there was ample testimony from which the jury could convict the appellant of attempted first degree murder and aggravated criminal trespass. See Pruett, 788 S.W.2d at 561. This issue is without merit.

Sentencing

Next, the appellant contends that the trial court improperly applied five (5) enhancement factors contrary to the decision in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). The appellant does not argue that the proof did not support the application of the enhancement factors, merely that Blakely prevents the application of enhancement factors that are neither submitted to a jury nor admitted by the defendant. The State argues that Blakely does not apply, and, in the alternative, that the trial court properly applied the enhancement factors.

The Tennessee Supreme Court recently determined that Blakely did not announce a new rule of law and that "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." State v. Gomez, 163 S.W.3d 632, 651 (Tenn. 2005). In Gomez, the court determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury nor admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of Blakely v. Washington, 542 U.S. 296, 124

S.Ct. 2531 (2004), United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005), or United States v. FanFan, the case consolidated with Booker, because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." Gomez, 163 S.W.3d at 661. As a result of the decision in Gomez, the appellant's issue is without merit.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE