IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2004

## STATE OF TENNESSEE v. ANTHONY TONY WOODS

**Appeal from the Circuit Court for Hardeman County**
**No. 6755    Jon Kerry Blackwood, Judge**

---

**No. W2003-02785-CCA-R3-CD  - Filed July 8, 2004**

---

The appellant, Anthony Tony Woods, also known as Dogman, was found guilty by a jury of aggravated assault and aggravated criminal trespass charges. The trial court sentenced the appellant to six years on the aggravated assault charge and dismissed the aggravated criminal trespass charge. In this direct appeal, the appellant challenges the sufficiency of the evidence. For the following reasons, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Clifford K. McGown, Waverly, Tennessee, on appeal, and Rickey Griggs, Assistant Public Defender, Somerville, Tennessee, at trial and on appeal, for the appellant, Anthony Tony Woods..

Paul G. Summers, Attorney General & Reporter; Elizabeth Ryan, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Joe Van Dyke, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On August 3, 2002, the victim, Fallon Hill, attended a party near her home in Bolivar, Tennessee. The appellant also attended the party. At some point that night, the appellant approached the victim and asked her if she wanted to "hit his blunt." She had met the appellant prior to that night, but knew him only as Dogman. She went with the appellant and several other people to the appellant's car where they proceeded to smoke marijuana. The victim had already had several drinks at the party. The victim claims that the only interaction she had with the appellant that night was when she went to his car to smoke marijuana, but Anthony Jones, the sister of the woman

hosting the party, claims that he saw the appellant and the victim sitting on a bench together that night where the appellant "had his arm around her."

When the victim got ready to leave the party, she discovered that her vehicle was blocked in by another car so she slept in her car for about thirty minutes waiting for someone to leave so she could drive home. She eventually left shortly after midnight, stopping on the way home to get some cigarettes and a soft drink. She also drove by her sister's house but did not stop when she noticed all the lights were off.

When the victim arrived at her mobile home, she went inside and locked the front door. She turned on two lights, one in the living room and one in the bathroom, changed into a t-shirt and underwear, and went to bed. The next thing she remembers is being awoken by someone grabbing her ankles, pulling her to the end of the bed, and yelling, "Get up bitch." The house was completely dark. The victim claims that the attacker used a pair of wire cutters to stab her in the face and that her head was "mashed" against the wall behind her bed. The attacker also allegedly tried to place duct tape over her mouth and told her that "he was going to kill [her]." She recognized the voice of the attacker as that of the appellant.

The victim says that the appellant then raped her twice digitally and that she was painfully scratched by the appellant's unusually long fingernails. She "was trying to push him off" and begged him to stop, even lying and telling him that she was pregnant in hopes that he would stop attacking her. Instead, the victim claims that the appellant then forced her to perform oral sex on him by pushing her head down onto his penis. At some point, the victim turned on a bedside lamp and positively identified the appellant as her attacker. The appellant then had sex with the victim while wearing a condom. He held her down with his arms and body weight. The victim remembers this happening more than one time because she remembers him changing condoms and placing the used condoms in a plastic bag. The appellant told her he was doing these things to her because "when he wanted something he was going to get it even if he had to take it." The appellant then told her that he would pay her rent if she kept everything a secret. The victim agreed, thinking that if she complied with his requests, he would leave her alone. The victim then proceeded to drive the appellant to a nearby bank where he withdrew $200 from an ATM machine and gave it to the victim. The victim drove the appellant back to her house, hoping that he would leave her alone.

At that time, the victim told the appellant that she was going to her sister's house. She went inside the house, gathered a few belongings, and took them out to her car. She went back into the house to get her keys and the appellant followed her inside, claiming that he could not find his keys. The victim, trying to get the appellant to leave, agreed to help him look for his keys. When the victim walked down the hallway towards her bedroom, the appellant struck her in the forehead with a hammer. The blow inflicted a laceration to the victim's forehead. The victim claims that the appellant hit her in the head with the hammer twice, but there was only one laceration on her head. She eventually managed to wrestle the hammer away from the appellant.

About that same time, the two heard a noise that sounded like a car pulling up to the victim's home. The appellant went to lock the front door. The victim made a run for it, bolting out the back door of the home with the hammer in her hand. She ran to the home of one of her neighbors, Priscilla and Willie Polk. Mr. Polk, an over-the-road truck driver, was in the driveway of their home preparing to leave on a trip. The victim was crying and claimed that she "had been raped and beaten in the head with a hammer." He immediately told his wife to call 911.

When the police arrived, the victim handed over both the $200 and the hammer. The victim was taken by ambulance to Bolivar General Hospital where she received stitches for the avulsive laceration to her forehead. No other visible injuries were noted by the paramedics or medical personnel. The victim did not have any other scratches, bruises, or cuts. A rape kit was administered, but the results were not in the medical records. While at the hospital, the victim identified the appellant as her attacker.

When the police investigated the scene, they found a broken window and cut screen on the exterior of the victim's mobile home. The police were able to get latent fingerprints from the window frame that matched the fingerprints of the appellant. The police also secured the transaction receipt from the bank confirming that a $200 withdrawal was made from the appellant's bank account at 4:59 a.m. on August 4, 2003.

The day after the attack, the victim stayed with her sister, who was having a pool party. Several people claim they saw the victim at her sister's house swimming, drinking beer and smoking marijuana.

The Hardeman County Grand Jury subsequently indicted the appellant on three counts of aggravated rape, false imprisonment, aggravated assault, and aggravated burglary. At trial, the appellant stipulated that he was present at the victim's mobile home the night of the incident and that the victim ran to the Polk's home claiming that she had been raped and beaten.

At the conclusion of the proof, the trial court dismissed one of the counts of rape. After deliberations, the jury found the appellant guilty of aggravated assault and aggravated criminal trespass. The jury recommended fines of $6,500 for the aggravated assault and $500 on the aggravated criminal trespass charge. At a sentencing hearing, the trial court sentenced the appellant to six years on the charge of aggravated assault and assessed a fine of $6,500. The trial court dismissed the aggravated criminal trespass charge.

The appellant filed a motion for new trial, arguing that the evidence was not sufficient to support the verdict. The trial court denied that motion. The appellant filed a timely notice of appeal. The only issue presented on appeal is the sufficiency of the evidence.

## Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In the case herein, the appellant was charged with three counts of aggravated rape, false imprisonment, aggravated assault and aggravated burglary. The jury found him guilty of aggravated assault and aggravated criminal trespass. The trial court later set aside the aggravated criminal trespass charge. On appeal, the appellant argues that the victim's "veracity is so compromised that the trier of fact should not have credited any of her testimony and the jury should have returned a verdict of not guilty for aggravated assault or, in the alternative, the trial judge should have set aside the verdict of aggravated assault." Specifically, he challenges the victim's claim that she was struck twice in the head with a hammer but only sustained one injury and the victim's claim that she was chased by the appellant when the footprints did not substantiate her assertion. The State counters that the appellant's argument is "patently meritless" because there was "overwhelming evidence" to support the charges and "no reasonable alternative explanation for the evidence of the attack."

A person commits assault who "(1) intentionally, knowingly or recklessly causes bodily injury to another; (2) intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another and a reasonable person would regard as extremely offensive or provocative." See Tenn. Code Ann. § 39-13-101(a). To convict the appellant of aggravated assault, the jury must have found that the appellant intentionally or knowingly committed an assault as defined in Tennessee Code Annotated section 39-12-101 and either caused serious bodily injury to another or used or displayed a deadly weapon. See Tenn. Code. Ann. § 39-13-102.

The appellant's argument is not so much a challenge to the sufficiency of the evidence, but a challenge to the weight given to the evidence by the jury. As noted, issues of credibility and the weight to be given to the evidence are matters solely for the jury. Byrge, 575 S.W.2d at 285. The testimony of the victim indicated that the appellant "mashed" her head into the wall in her bedroom, threatened to kill her, stabbed her in the face with wire cutters, violently raped her, and hit her in the head with a hammer. During the trial, there were repeated attempts by counsel for the appellant to discredit the testimony of the victim by pointing out inconsistencies in her version of the events. The jury did not find the appellant guilty of aggravated rape or false imprisonment. Thus, it is implicit in the verdict that the jury did not find some of the victim's testimony credible. While there was no physical evidence of any injuries to the victim other than the avulsive laceration on her forehead caused by the hammer, there was evidence that the victim suffered physical injury. The victim's blood was found in the hallway of her mobile home, and she was ultimately taken to the hospital where she received stitches. Further, the jury was within its power to determine that the hammer was used by the appellant as a deadly weapon. See State v. Madden, 99 S.W.3d 127, 137 (Tenn. Crim. App. 2002) (explaining that there are two types of deadly weapons - those like firearms that are deadly per se and those that are deadly because of the manner in which they are used). We cannot conclude that the evidence presented herein was insufficient for a rational trier of fact to find the appellant guilty of aggravated assault. This issue is without merit.

### Conclusion

After a review of the record, we conclude that the judgment of the trial court should be affirmed.

_____

_____                _____

JERRY L. SMITH, JUDGE