# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned On Briefs February 1, 2011

## STATE OF TENNESSEE v. DARIUS WILLIAMS

**Appeal from the Criminal Court for Shelby County**
**No. 09-01569     W. Mark Ward, Judge**

---

**No.  W2010-00797-CCA-R3-CD   -   Filed April 7, 2011**

---

Appellant, Darius Williams, was indicted by the Shelby County Grand Jury for three counts of aggravated robbery, one count of aggravated burglary, and one count of employing a firearm during a felony.  After a jury trial, Appellant was found guilty on all counts.  As a result, Appellant was sentenced to an effective sentence of seventeen years.  After the denial of a motion for new trial, Appellant initiated a direct appeal.  On appeal, Appellant challenges the sufficiency of the evidence.  After a review of the record, we conclude that the evidence was sufficient to support Appellant's convictions.  Accordingly, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Tony N. Brayton, Assistant Public Defender, Memphis, Tennessee, for the appellant, Darius Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

On December 3, 2008, Christopher Cooks lived at a home located at 1983 Nedra in Memphis. Late that evening, Memphis Police Department responded to a 911 call reporting a robbery. Officer Mark Scarborough was met at the residence by Mr. Cooks, Terry Briggs, and Betty Watkins.

Mr. Cooks reported to Officer Scarborough that he was outside the home when he was approached by three African-American males, one of whom was brandishing an Uzi submachine gun. The men ordered Mr. Cooks to go back into the house. At gunpoint, the men took a $1,300 "retirement check" and $1,200 in cash from Mr. Cooks.[1] The men also took twenty dollars from Mr. Briggs and fifteen dollars from Ms. Watkins.

Officer Scarborough suspected that all three of the victims had been drinking. He described Mr. Cooks as "angry" and Mr. Briggs as "ambivalent." Mr. Cooks described the gunman as around five feet, four inches tall and approximately nineteen to twenty years of age. Mr. Cooks claimed that he had seen at least two of the perpetrators around the neighborhood before. Mr. Cooks had a "sneaking suspicion" that Mr. Briggs was involved in the robbery.

Sergeant Myron Fair was assigned to investigate the incident. Mr. Cooks recounted the events to Sergeant Fair. According to Mr. Cooks, he went outside to get the trash when he was approached by three men, one of whom was armed with an Uzi submachine gun. The men forced him back into the home, where they took money from everyone inside. At some point, Mr. Cooks described the gunman as five feet four inches tall and around nineteen to twenty years of age. Mr. Cooks thought that he had seen the gunman around the neighborhood before. A few days later, both Mr. Cooks and Mr. Briggs were shown a photographic lineup. Both men positively identified Appellant as the gunman after viewing the photographic lineup. Both men also positively identified Appellant as the gunman at trial.

Appellant was arrested. He denied any involvement with the robbery. Appellant was indicted in January of 2009 by the Shelby County Grand Jury for three counts of aggravated robbery, one count of aggravated burglary and one count of employing a firearm during the commission of a felony.

---

[1] Mr. Cooks's statement to the police initially indicated that the robbers took $713 in cash and two social security checks valued at $331 and $327.

-2-

At trial, Mr. Cooks testified that he was forty-three years of age. Mr. Cooks explained that he was on disability because he is bipolar. Mr. Cooks also admitted that he was an alcoholic, having started using alcohol at the age of six or seven. Mr. Cooks also admitted that he occasionally used drugs. Mr. Cooks claimed that he was sober at the time of the robbery and had been sober for about three weeks prior to the incident.

Mr. Cooks got a degree in hotel/restaurant management from Albany State University in Georgia. At the time of the robbery, he was self-employed, contracting with individuals to perform remodeling jobs. Mr. Cooks served as an intermediary, hiring various friends and relatives to do the actual work. On December 3, 2008, Mr. Cooks had just finished doing a job for Northern Realty Company. He collected $5,600 for the job and paid his workers for their work. He also received his disability checks that day.

After paying everyone, Mr. Cooks met his daughter and grandchildren for dinner. He gave them some money as well, and then visited his pastor to pay his tithe.

On the way home, Mr. Cooks called Ms. Watkins, his girlfriend. During the phone conversation, Ms. Watkins told Mr. Cooks that she had no money. He invited her to come over to his house. She arrived shortly after he got home.

Mr. Briggs was at the house when Mr. Cooks arrived home. Mr. Briggs was living with Mr. Cooks at that time and had been staying at the house for about two months.

After Ms. Watkins arrived, Mr. Cooks and Ms. Watkins went to the store, where they bought gas, food, and three twenty-four ounce beers. Mr. Cooks and Ms. Watkins went back to the house, where Mr. Cooks offered Ms. Watkins money to fold his laundry. Mr. Cooks also got into some kind of argument with Mr. Briggs about money. Mr. Cooks eventually gave Mr. Briggs fifteen dollars and went outside to "cool off" because he had "hit a point of no return." When Mr. Cooks walked outside, he was approached by three "grown people" who robbed him at gun point.

Mr. Cooks testified that Appellant pulled an "Uzi" out of his jacket. The men took two disability checks worth more than $300 each and $1,200 in cash. Mr. Cooks was then forced back inside his house. The men took twenty dollars from Ms. Watkins and fifteen dollars from Mr. Briggs. At trial, Mr. Cooks claimed that Appellant tried to fire the weapon on the way out the door.

Mr. Cooks explained that he had not taken his medication on the day of the robbery and was therefore unable to provide a sufficient description of the robbers. Mr. Cooks suspected that Mr. Briggs was the cause of the robbery because he was the kind of person to

"break into things." Mr. Cooks initially kicked Mr. Briggs out of the house but ultimately let Mr. Briggs stay after he paid $200 for rent.

Ms. Watkins testified at trial. Mr. Briggs is her nephew. Ms. Watkins and Mr. Cooks had an on-again, off-again relationship that had lasted around eight years prior to the incident. On the night of December 3, all three were inside Mr. Cooks's residence. Ms. Watkins saw Mr. Cooks peer out the blinds before going outside. Mr. Cooks walked outside briefly before coming back in the door. Ms. Watkins opened the door, and Mr. Cooks was being "led in" by a gunman and one other man.

Ms. Watkins testified that she took twenty dollars out of her pocket and was pushed on the couch by one of the robbers. She got the twenty dollars earlier that evening from Mr. Cooks.

Ms. Watkins could not identify either man involved in the crime and did not recall going out for food, beer, or gas with Mr. Cooks prior to the robbery.

Mr. Briggs also testified at trial. He recalled that on the night of the incident, Mr. Cooks went outside for a few minutes before being led back inside by a man with an Uzi. Mr. Briggs was ordered to lie down on the floor. The gunman took his billfold and fifteen dollars. According to Mr. Briggs, the gunman took twenty dollars from Ms. Watkins after a brief struggle. Mr. Briggs insisted that as the gunman left, he pulled the trigger on the Uzi twice. The gun did not discharge.

Mr. Briggs told police that he immediately recognized Appellant. Mr. Briggs was later able to identify Appellant in a photographic lineup.

Appellant testified at trial that, at the time of the offense, he was in the eleventh grade at Frayser High School in Memphis. Appellant was not raised by his biological mother, however, his biological mother lived about fifteen minutes away from Mr. Cooks. Appellant visited his mother on the afternoon of December 4, 2008, and was arrested during his visit. Appellant denied any involvement in the crimes.

Ardenita Rodgers testified that Appellant was home at the time of the incident. Appellant had lived with her for about one year prior to the incident and she felt like she was a mother figure for Appellant. According to Ms. Rodgers, Appellant did not own an Uzi.

At the conclusion of the trial, the jury found Appellant guilty of all charges. As a result, the trial court sentenced Appellant to an effective sentence of seventeen years.

Appellant filed a timely motion for new trial.  The trial court denied the motion after a hearing.  Appellant filed a timely notice of appeal.  On appeal, Appellant argues that the evidence is insufficient to support the convictions.

*Analysis*

Appellant argues on appeal that his convictions are "based solely upon the identifications made and the contradictory testimony offered by Christopher Cooks and Terry Briggs."  Appellant contends that because the testimony of the witnesses is not credible and there is no physical evidence to support the convictions, the evidence is insufficient.  The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles.  A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State.  *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).  Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt."  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence.  *Id.*  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75.  In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  *See Tuggle*, 639 S.W.2d at 914.  As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence."  *Matthews*, 805 S.W.2d at 779.  Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  *State v. Genaro Dorantes*, ___ S.W.3d ___, No. M2007-01918-SC-R11-CD, 2011 WL 208306, at *7 (Tenn. Jan. 25, 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Initially, we note our agreement with Appellant's assertion that the identity of the perpetrator is an essential element of any crime.  *State v. Thompson*, 519 S.W.2d 789, 793

(Tenn. 1975). However, the identification of the defendant as the person who committed the crime is a question of fact for the trier of fact. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Further, a victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity. *See State v. Hill*, 987 S.W.2d 867, 870 (Tenn. 1998).

Viewing the evidence in a light most favorable to the State, the evidence produced at trial was more than sufficient to establish Appellant's identity as the perpetrator in the case herein. Both Mr. Cooks and Mr. Briggs were afforded the opportunity to see Appellant as the perpetrator during the incident at Mr. Cooks's home as they were held at gunpoint by Appellant during the robbery. Further, Mr. Briggs testified that he recognized Appellant from the moment he entered Mr. Cooks's home. Both Mr. Cooks and Mr. Briggs positively identified Appellant from a photographic lineup presented by police after the incident. Additionally, both witnesses positively identified Appellant during their testimony at trial. The jury's verdict indicates that they perceived the testimony of Mr. Cooks and Mr. Briggs to be credible. As stated above, the conflicts in the testimony and the questions of witness credibility are within the province of the jury. *Pruett*, 788 S.W.2d at 561. The evidence was sufficient to support the convictions. Appellant is not entitled to relief on appeal.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE