# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
March 29, 2011 Session

## STATE OF TENNESSEE v. DAVIS BRADLEY WALDROUP, JR.

**Appeal from the Criminal Court for Polk County**
**No. 08-101   Carroll L. Ross, Judge**

---

### No.  E2012-00758-CCA-RM-CD - Filed August 15, 2013

---

The Polk County Grand Jury indicted Appellant, Davis Bradley Waldroup, Jr., for two counts of especially aggravated kidnapping, one count of first degree murder, and one count of attempted first degree murder.  These charges stemmed from an altercation Appellant had with his wife and her best friend at his trailer on Kimsey Mountain.  A jury convicted Appellant of one count each of aggravated kidnapping, especially aggravated kidnapping, voluntary manslaughter, and attempted second degree murder.  The trial court sentenced Appellant to an effective sentence of thirty-two years.  On appeal, Appellant argued that the evidence was insufficient to support his conviction of aggravated kidnapping, that the trial court erred in denying his motion for change of venue, erred in allowing the introduction into evidence of a photograph of one of the victim's injuries, and erred in denying his motion for judgment of acquittal.  After a thorough review of the record on appeal, we affirmed the judgments of the trial court.  Appellant filed a Rule 11 application, pursuant to the Tennessee Rules of Appellant Procedure requesting an appeal to the Tennessee Supreme Court.  On April 2, 2012, the Tennessee Supreme Court granted the application and remanded the case to this Court for reconsideration in light of the Tennessee Supreme Court's decision in *State v. White*, 362 S.W.3d 559 (Tenn. 2012).  After reconsidering the facts and circumstances of the case at hand with regard to our supreme court's decision in *White*, we conclude the we must reverse the convictions for aggravated kidnapping and especially aggravated kidnapping and remand for a retrial on these two counts.  We affirm all other judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Reversed in Part and Affirmed in Part.

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined.  J. C. MCLIN, J., mortuus.

Shari Tayloe Young, Cleveland, Tennessee, for the appellant, Davis Bradley Waldroup, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Steven Bebb, District Attorney General, and Drew Robinson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION ON REMAND

## PROCEDURAL BACKGROUND

A jury trial was held March 17-21, 2009. At the conclusion of the trial, Appellant was convicted of one count each of aggravated kidnapping, especially aggravated kidnapping, voluntary manslaughter, and attempted second degree murder. The trial court held a sentencing hearing May 7, 2009, and sentenced Appellant to an effective sentence of thirty-two years. Appellant filed a timely notice of appeal.

On direct appeal, Appellant argued that the trial court erred in its denial of his motion for a change of venue; that the trial court erred in allowing the introduction of photographs of one of the victims; that the trial court erred in denying his motion for judgment of acquittal; and that the evidence was insufficient to support his convictions, in particular his conviction of aggravated kidnapping. *State v. Davis Bradley Waldroup*, No. E2010-01906-CCA-R3-CD, 2011 WL 5051677, at * 1 (Tenn. Crim. App., at Knoxville, Oct. 20, 2011), perm. app. granted, (Tenn. Apr. 2, 2012). This Court determined that Appellant's issues were not persuasive and affirmed his convictions. *Id.* at * 9.

On March 9, 2012, the Tennessee Supreme Court issued *State v. White*, 362 S.W.3d 559 (Tenn. 2012). In *White*, our supreme court revisited the requirements for a conviction of a form of kidnapping when there is an accompanying felony. 362 S.W.3d 576-581. Appellant requested permission to appeal this Court's determination on direct appeal. The supreme court remanded the case to this Court on April 2, 2012, in light of its opinion in *White*.

## FACTUAL BACKGROUND

Appellant and one of the victims, Penny Waldroup, had been married for several years. By October 2006, their relationship had become strained. On October 13, 2006, Appellant was staying in his trailer on Kimsey Mountain in Polk County. That day, Mrs. Waldroup brought their children to visit Appellant. She took her friend Leslie Bradshaw, the other victim in this case, with her. Before they left for Appellant's trailer, Mrs. Waldroup told a neighbor to call the police if she and Ms. Bradshaw had not returned by 7:30 p.m.

When the victims arrived at the cabin, Appellant walked around the trailer to meet them. He was carrying a .22 rifle at the time. The children were running in and out of the trailer. The victims began to unload the children's belongings and the groceries they had

brought with them.

After they finished unloading the van, Mrs. Waldroup tried to get in the van to leave, but Appellant told her that they needed to talk. Mrs. Waldroup replied that she had to get to work, and they could talk when she returned to pick up the children. Appellant grabbed Mrs. Waldroup's van keys and threw them into the woods. Mrs. Waldroup pleaded with Appellant to let her and Ms. Bradshaw leave. Appellant, while in possession of the rifle, began to verbally abuse Mrs. Waldroup and Ms. Bradshaw. Mrs. Waldroup was sitting in the driver's seat and Ms. Bradshaw was standing near the passenger-side door. Appellant was standing by the driver's side of the van. Appellant began to yell at Ms. Bradshaw and blamed her for the demise of his marriage to Mrs. Waldroup.

Appellant, while standing by the driver's side door, raised the rifle and began to fire. Mrs. Waldroup pushed the butt of the gun up and attempted to escape behind the passenger-side seat and out of the rear, sliding van door. Mrs. Waldroup found Ms. Bradshaw lying on the ground. As Appellant continued to fire the rifle, Mrs. Waldroup lingered over Ms. Bradshaw and told her they needed to escape. Ms. Bradshaw did not respond.

As she lingered by Ms. Bradshaw, Mrs. Waldroup realized that Appellant was walking around the van. She left Ms. Bradshaw and attempted to run up the side of the mountain. As she ran up the mountain, Appellant shot her in the back. She fell, and Appellant caught up with her. He pushed her back to the ground on her back and aimed the rifle at her head. Mrs. Waldroup kicked the rifle with her foot, and it slid down the side of the mountain. At that point, Appellant got out a pocketknife and began to cut her with the knife. She was able to get the knife from him and threw it as hard as she could away from Appellant. Appellant and Mrs. Waldroup both got up from the ground and ran. She ran toward the driveway to try to get to a neighbor's house. The nearest neighbor was a quarter of a mile away. Appellant ran to get a square shovel and began to hit Mrs. Waldroup in the head with it.

The couple's dog began to growl at Appellant and diverted his attention away from Mrs. Waldroup. Mrs. Waldroup was able to run around the trailer in an attempt to escape Appellant. However, Appellant caught up with her and began to hit her with a machete in the back of the head. Mrs. Waldroup turned around and held her arms up to protect herself. She begged Appellant to stop hitting her with the machete, but he hit her several more times. At some point in the attack, Mrs. Waldroup lost her pinkie finger on her left hand. When he stopped hitting Mrs. Waldroup with the machete, he grabbed her by her hair and dragged her over to Ms. Bradshaw's body. He threw Mrs. Waldroup on the ground next to Ms. Bradshaw's body, and he began to kick Ms. Bradshaw's body, as well as hit the body with the machete.

Appellant jerked Mrs. Waldroup up and led her into the trailer where the children were. Mrs. Waldroup asked one of her daughters to bring her some water to drink and a

towel in which to wrap her arms. At this point, Mrs. Waldroup was covered in blood. She was also feeling very weak from loss of blood and felt too weak to stand. Her daughter found a sheet which they used to wrap up her arms. At this point, Appellant decided he wanted to have sexual intercourse with Mrs. Waldroup. He told the children to tell Mrs. Waldroup goodbye because that was the last time they would see her. She said goodbye to each of her children and told them that she loved them.

Appellant took Mrs. Waldroup into the bedroom and became upset because she was too messy to have intercourse. He wanted her to shower, but she refused because she did not want to make it easy for him to clean up the blood. She cleaned up some at the sink, and Appellant pulled her shirt off and threw her onto the bed. Appellant had just gotten on top of her when her daughter yelled into the bedroom that she saw headlights in the driveway. Appellant walked into the living room to look out of the window. A police officer was driving up the driveway. Mrs. Waldroup ran out of the front door of the trailer without her shirt or bra and jumped into the back of the police car. When he began to back out of the driveway, she begged him to stay to protect her children.

The officer got out of his car and approached Appellant, who had come out of the trailer. Appellant told the officer that he had killed Ms. Bradshaw and showed the officer her body. After being taken to an ambulance, Mrs. Waldroup was airlifted to Erlanger Medical Center where she remained for at least two weeks. The officer arrested Appellant.

In August 2008, the Polk County Grand Jury indicted Appellant for two counts of especially aggravated kidnapping, one count of first degree murder, and one count of attempted first degree murder. Following a jury trial, Appellant was convicted of aggravated kidnapping, especially aggravated kidnapping, voluntary manslaughter, and attempted second degree murder. The trial court held a sentencing hearing on May 7, 2009, and sentenced Appellant to an effective sentence of thirty-two years.

## ANALYSIS

Appellant argues that the evidence was insufficient to support his conviction for aggravated kidnapping, the charge for which Ms. Bradshaw was the victim. The State argues that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to

demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Prat*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant argues that the evidence is not sufficient to support his conviction of aggravated kidnapping based upon the language contained in the bill of particulars. The bill of particulars stated the following:

> [Appellant] did while armed with a rifle, remove the keys from the ignition of the vehicle of Penny Waldroup in which Leslie Bradshaw was a passenger. That act interfered with the substantial liberty of Leslie Bradshaw. [Appellant] at that time inflicted bodily injuries which resulted in the death of Leslie Bradshaw.

Appellant argues that the State did not present proof to the jury that his taking of the van keys "removed or confined" the victim. He argues that the victim "was moving freely and smoking a cigarette while Appellant and Penny Waldroup argued . . . ."

Aggravated kidnapping is defined in the following manner:

(a) Aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed:
(1) To facilitate the commission of any felony or flight thereafter;
(2) To interfere with the performance of any governmental or political function;
(3) With the intent to inflict serious bodily injury on or to terrorize the victim or another;
(4) Where the victim suffers bodily injury; or
(5) While the defendant is in possession of a deadly weapon or threatens the

use of a deadly weapon.

False imprisonment is defined as, "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a).

The statutory elements of aggravated kidnapping do not require a finding that Appellant moved the victim any specific distance or restrained her for any particular length of time in order for Appellant's actions to substantially interfere with the victim's liberty. *See State v. Turner*, 41 S.W.3d 663, 670 (Tenn. Crim. App. 2000) (stating that especially aggravated kidnapping does not require the above-listed elements); *State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997). In our original opinion, we concluded that a reasonable trier of fact could conclude that Appellant confined Ms. Bradshaw so that it substantially interfered with her liberty.

However, since the filing of the original opinion from the direct appeal, our supreme court decided *White*. In *White*, our supreme court set out a new analysis to be undertaken by the judiciary when faced with a situation where a defendant is indicted for both a form of kidnapping as well as another felony, such as rape or robbery. The question is whether the kidnapping was incidental to the other felony. Our supreme court held that the previous rule set out in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and *State v. Dixon*, 957 S.W.2d 535 (Tenn. 1997), requiring a due process analysis is overruled. *White*, 362 S.W.3d at 578. The court subsequently stated that in doing so it was not creating a new rule, but instead defining "the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty." *Id.* Because a new law was not created, retroactive application is not required. *Id.*

Our supreme court also stated the following:

> Under the standard we adopt today, trial courts have the obligation to provide clear guidance to the jury with regard to the statutory language. Specifically, trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony. Instructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as rape or robbery. When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is

significant enough, standing alone, to support a conviction. In our view, an instruction of this nature is necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying felony.

*Id.* Thereafter, our supreme court set out a suggestion of appropriate instructions in such a case. *Id.* at 580-81.

Our supreme court went on to analyze the facts of the case under review in *White*. The court stated that the facts in question could have been interpreted in different ways as to the question of whether the confinement of the victim exceeded what was necessary to complete the accompanying felonies of burglary and aggravated robbery. *Id.* at 579. The supreme court determined that the issue was, therefore, a jury question. Our supreme court set out the jury instructions given by the trial court for especially aggravated kidnapping. *Id.* at 579-80. These instructions tracked the statutory language, but did not define the element of statutory interference. *Id.* at 580. Our supreme court determined that these instructions were not sufficient to instruct the jury as to the need to determine whether the "confinement was not essentially incidental to the accompanying felony offense." *Id.* For this reason, the supreme court held that the defendant was entitled to a new trial on his especially aggravated kidnapping charge. *Id.*

On remand, we have reviewed the supreme court's opinion in *White* as well as the trial record in the case on appeal. The instruction given to the jury in Appellant's case is substantially similar to that given to the jury in *White*. Therefore, we must conclude under *White*, that these instructions were not adequate. The question now becomes whether the members of the jury could have interpreted the facts of the case either way as far as whether or not the "confinement was not essentially incidental to" the murder of Ms. Bradshaw and the attempted murder of Mrs. Waldroup.

The facts in the case sub judice showed that shortly after Appellant and Mrs. Waldroup began to argue, Appellant took the keys out of the ignition of the van and threw them into the woods. Mrs. Waldroup and Ms. Bradshaw were unable to leave Appellant's driveway because they could not start the car. In addition, as alleged in both the indictment and the bill of particulars, Appellant was aiming a gun at the two victims. Mrs. Waldroup testified that she feared for her life and felt like she was not free to leave because she believed that Appellant would shoot her if she attempted to do so. The nearest neighbor, according to the evidence at trial, lived about a quarter of a mile away from Appellant. Therefore, running to a neighboring house for help was not feasible. It is clear from the testimony that Appellant's trailer was located in a remote, rural area. While it is true that the victims had no means of escape from Appellant's property other than on foot and no safe place to go to within walking distance, we must conclude that it is possible to interpret the throwing of the keys as being either incidental to the murder and attempted murder or as not

being incidental to the murder and attempted murder. Therefore, it is a jury question, and the case must be remanded to the trial court for a new trial with regard to Appellant's charges for the two counts of especially aggravated kidnapping that resulted in the convictions of one count of aggravated kidnapping and one count of especially aggravated kidnapping. During the trial on remand, the trial court should take note of the jury instructions set out by our supreme court in *White* and instruct the jury in such a manner.

## **CONCLUSION**

For the foregoing reasons, we affirm in part and reverse and remand in part the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE