# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned On Briefs February 12, 2014

## STATE OF TENNESSEE v. EDWARD LEPHANNA KILCREASE

### Appeal from the Circuit Court for Coffee County
### No. 38, 477   Vanessa A. Jackson, Judge

---

### No.  M2013-00515-CCA-R3-CD - Filed June 20, 2014

---

In 2011, the Coffee County Grand Jury indicted Appellant, Edward Kilcrease, for aggravated burglary, employment of a firearm during commission of a dangerous felony, possession of a firearm during commission of a dangerous felony, aggravated assault, and vandalism. Prior to trial, the State dismissed the charges of employment of a firearm during commission of a dangerous felony and possession of a firearm during commission of a dangerous felony and amended the aggravated assault charge to simple assault. A jury convicted Appellant of attempted aggravated burglary and vandalism. On appeal, Appellant argues that the evidence presented by the State at trial is insufficient to support his conviction for attempted aggravated burglary. After a thorough review of the record, we conclude that the evidence presented at trial was sufficient to support Appellant's conviction for attempted aggravated burglary because proof that Appellant actually completed the criminal offense does not render the evidence insufficient to sustain a conviction for an attempt of the same offense. Consequently, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Jeremy W. Parham, Manchester, Tennessee, for the appellant, Edward Lephanna Kilcrease

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Mickey Lane, District Attorney General; Felecia Walkup, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

In December 2010, Appellant saw his former girlfriend, Myohsha Brooks, riding in a car with another male shortly after she and Appellant broke off their relationship. Ms. Brooks was in her early-20's and a mother of four. At trial she stated that she had known Appellant "basically all her life," as he was an elder at the church she attended while growing up. Ms. Brooks recalled that she had a romantic relationship with Appellant, a man in his mid-50's who had many previous encounters with the law, and that the relationship had lasted approximately six months. Ms. Brooks further testified that while the two were dating, Appellant would often "randomly pop by" her home without advance notice. He also spent the night there on occasion.

On the night that the incidents giving rise to this case took place, Appellant saw Ms. Brooks with another man and sent her a text message indicating that he saw her. The other man with Ms. Brooks was Corey Harrison,[1] who Ms. Brooks described as her friend. Around midnight, Ms. Brooks received another text message from Appellant that inquired, "What are you doing? F[ ]ing?" Ms. Brooks did not give the message much thought as she was preparing to take a shower. At that point, Mr. Harrison was in the bedroom watching television and her children were asleep in the living room.

While she was still in the bathroom, Ms. Brooks heard a vehicle pull up in front of her house, and Appellant got out of a truck and began walking towards her home. Having formerly been in a relationship with Appellant, Ms. Brooks testified that she became apprehensive because she could tell by the way Appellant was walking towards her home that "[he] did not have good intentions."

Upon reaching the house, Appellant knocked on the bedroom window of Ms. Brooks's home and, when no answer came, he began banging and subsequently yelling at the front door. Appellant repeatedly exclaimed, "Open the mother f[ ]ing door. Open the door, B[ ][,] open the door." Mr. Harrison opened the main door but left the storm door separating them closed and locked. While watching from the hallway, Ms. Brooks stated that she did not want Appellant to come in to the house. She explicitly told Mr. Harrison not to open the door. She then heard the sound of grinding metal as Appellant forced the storm door open.

---

[1] There is some confusion to the other man's name as Ms. Brooks testified that she knew her friend as "Corey Harris." He is named in the indictment as "Corey Harrison." We will refer to this individual as he is named in the indictment.

As Appellant entered Ms. Brooks's home, Mr. Harrison attempted to bar Appellant further entrance. Appellant then shoved Mr. Harrison to clear his path, which resulted in a verbal altercation as the two began exchanging threats and profanities. Ms. Brooks testified at trial that throughout the incident Appellant was threatening her life, as well as Mr. Harrison's. Appellant made statements such as, "I am Eddie mother-f[ ]ing Kilcrease. I'm from Nashville and I will kill you," as well as, "Y'all don't know me. I will f[ ]ing kill you," and finally, "I will kill you. Do you not see what I just did?"

Following a few minutes of Mr. Harrison and Appellant swapping threats and vulgarities, Ms. Brooks ordered Appellant to leave her house. Appellant declared that he wanted his "sh[ ]," which Ms. Brooks understood to mean a religious DVD that Appellant loaned her. Ms. Brooks told Appellant, "I don't see it, bitch. You can walk over there and get your stuff." Appellant went and retrieved the DVD only to recommence threatening and exchanging profanities with Mr. Harrison.

Ms. Brooks decided to call the police at this point. When she informed Appellant of her 911 phone call, he ran outside and up the street. In his haste, Appellant slammed the storm door as he left, causing the glass portion to break out of the framing.

The authorities later arrived and took a preliminary report, which was then given to Tullahoma Police Detective Dale Stone, who was assigned to investigate the incident the following morning. Detective Stone took statements at Ms. Brooks's residence from both Ms. Brooks and Mr. Harrison, and then examined the damaged lock and handle of the storm door. Based upon the interviews that he conducted and the inspection of the damaged storm door, Detective Stone obtained warrants against Appellant. Once Appellant was in custody, Detective Stone interviewed him regarding the events that took place. Appellant voluntarily confirmed that he went to Ms. Brooks's residence the night before and knocked on both her front door and bedroom window. Additionally, Appellant admitted that he was engaged in a scuffle with another man who was inside Ms. Brooks's residence. Finally, Appellant conceded that he fled from the police when they encountered the truck in which he was riding "because he knew that he had trespassed and that he did not want to get the driver in trouble."

On April 13, 2011, an indictment was returned charging Appellant with aggravated burglary, employment of a firearm during commission of a dangerous felony, possession of a firearm during commission of a dangerous felony, aggravated assault, and vandalism. Prior to trial, the State dismissed the charges of employment of a firearm during commission of a dangerous felony and possession of a firearm during commission of a dangerous felony. The State also amended the aggravated assault charge to simple assault. A jury returned a verdict finding Appellant guilty of attempted aggravated burglary, a lesser-included offense

of aggravated burglary in accordance with Tennessee Code Annotated section 39-14-403, and vandalism. The judge sentenced Appellant to twelve years for attempted aggravated burglary, and eleven months and twenty-nine days for vandalism. Appellant's motion for new trial was denied. He filed a timely notice of appeal.

*Analysis*

Appellant challenges the sufficiency of the evidence supporting his attempted aggravated burglary conviction, arguing that the State failed to prove every element of the crime for which he was convicted. Specifically, Appellant claims that no evidence was presented that Appellant attempted, but did not complete, the charged offense. According to Appellant, the evidence presented at trial was susceptible to only two interpretations: either Appellant entered Ms. Brooks's habitation with permission or without it. There was no evidence to support the claim that he only attempted to enter the habitation. Appellant argues it is error to be convicted of the lesser-included offense of attempted aggravated burglary where the evidence presented at trial was that Appellant actually completed the charged offense. The State contends that the evidence was sufficient to convict Appellant of attempted aggravated burglary and that this Court should affirm the judgment of the trial court.

When a defendant challenges the sufficiency of the evidence on appeal, the relevant question is whether any trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P.13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). An appellant has already been found guilty by a jury, which removes the presumption of innocence that the appellant once had, and replaces it with a presumption of guilt that the appellant must now overcome. This shifts the burden of proof to the appellant to show the insufficiency of the evidence on appeal. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *State v. Mario Blanch*, No. W2012-01027-CCA-R3-CD, 2013 WL 5531717 (Tenn. Crim. App., at Jackson, Oct. 4, 2013). Therefore, this Court will afford the State "the strongest legitimate view of the evidence, as well as all reasonable and legitimate interests that may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914. This evidentiary presumption in favor of the State is based on the fact that a guilty verdict that has been rendered by a jury and "approved by the trial judge accredits the testimony of the" State's witnesses and resolves all conflict in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).

The guilt of the defendant may be predicated upon direct evidence, circumstantial evidence, or a combination of the two. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Regardless, "[t]he standard of review is the same whether the

conviction is based upon direct or circumstantial evidence." *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). As such, questions concerning the weight and value to be given to evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact; consequently, this Court is precluded from re-weighing the evidence when evaluating the convicting proof, nor may we substitute our own inferences for those formed by the trier of fact from circumstantial evidence. *State v. Pruett*, 778 S.W.2d 559, 561 (Tenn.1990); *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Hence, this Court's sole inquiry when evidentiary sufficiency is the only issue raised on appeal is to determine whether any rational jury could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See Dorantes*, 331 S.W.3d at 379.

When a defendant is convicted of a lesser-included offense, the defendant may challenge the sufficiency of the evidence on appeal. *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2001). When convicted of the lesser-included offense, the proof must be sufficient to support each and every element of the convicted offense to sustain a conviction. *Id*. "If every element is not supported by sufficient proof, the defendant is entitled to a reversal of the conviction." *Id*. An offense is a lesser-included offense if all of its statutory elements are included within the statutory elements of the offense charged. *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999). The fact "that the proof may support conviction of a different, even 'greater', offense does not [remove] the constitutional requirement that the proof support each and every element of the offense for which the defendant was actually convicted." *State v. Jeremy Wendell Thorpe*, No. M2012-02676-CCA-R3-CD, 2013 WL 5436701 (Tenn. Crim. App., at Nashville, Sept. 27, 2013).

The "criminal attempt statute requires that the State prove two material elements: [first] the culpability required for the attempt crime; and [second] an act or act(s) in furtherance of the attempted crime." *Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000). A failure to complete a criminal offense is not an element of criminal attempt. *See Jeremy Wendell Thorpe*, 2013 WL 5436701, at *5; s*ee also* T.C.A. § 39-12-10; *State v. Allen*, 69 S.W.3d 181, 187 (Tenn. 2002). Proof at trial that the defendant actually completed the crime does not prohibit a jury instruction for a lesser-included offense of attempt or conviction of a lesser-included offense, so long as evidence existed to support the lesser-included offense conviction. *See Jeremy Wendell Thorpe*, 2013 WL 5436701, at *5.

In this case, Appellant was convicted of attempted aggravated burglary. Burglary is committed when a person enters a habitation, without consent of the owner, with the intent to commit a felony, theft, or assault. *See* T.C.A. § 39-14-402 and -403. Criminal attempt is defined as when a person "acting with the kind of culpability otherwise required for the offense . . . [a]cts with the intent to complete a course of action or cause a result that would

constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). Under Tennessee law, "it is no defense to prosecution for criminal attempt that the offense was actually committed." T.C.A. § 39-12-101(c).

Appellant bases his argument on *State v. Parker*, a case wherein the court determined that a defendant may not be convicted of an attempt where the evidence suggests only two possibilities: that either the offense was committed or it was not. 350 S.W.3d 883, 909 (Tenn. 2011). In *Parker*, the defendant was originally charged with first-degree felony murder following the rape of an elderly woman who died from an injury inflicted inadvertently during the course of the rape. 350 S.W.3d 883, 888. At trial, the jury was instructed on second-degree murder as a lesser-included offense and then convicted the defendant of second-degree murder. The Tennessee Supreme Court reversed the conviction because, even though the evidence presented at trial supported a first-degree felony murder conviction, the evidence was not sufficient to support a conviction of second-degree murder. First-degree felony murder required no culpable mental state, while second-degree murder required a knowing mental state. The court reasoned that because the elements of second-degree murder were significantly different, and not included in the elements of first-degree murder, the conviction for second degree murder was improper. *See Parker*, at 909; *see also* T.C.A. § 39-13-202; T.C.A. § 39-13-210.

We determine that *Parker* is distinguishable from the case herein. *Parker* involved the consideration of two offenses with different elements, first degree felony murder and second degree murder. There, the elements of the lesser included offense were clearly not included in the primary offense.

Appellant also cites *State v. Kevin Fritz Edwards*, No. E2010-01731-CCA0-R3-CD, 2012 WL 1799025, at *9-10 (Tenn. Crim. App., at Knoxville, May 18, 2012), to support his argument. In *Edwards*, the defendant was indicted for aggravated sexual battery. 2012 WL 1799025, at *1. There, the victim testified affirmatively that the defendant touched her breasts and vagina, while the defendant flatly denied fondling the victim whatsoever. The State did not seek to introduce any evidence that the defendant was unsuccessful and solely attempted to touch the victim. The jury was instructed on attempted aggravated sexual battery and then found the defendant guilty of that lesser-included offense. On appeal, a panel of this Court reversed finding a lack of sufficient evidence because the proof at trial "presented only two possible interpretations of facts – that the defendant either completed the offense of aggravated sexual battery or [he] did not." *Id*.

At least two panels of this Court have declined to follow *Kevin Fritz Edwards*. In

*State v. Jeremy Wendell Thorpe*, No. M2012-02676-CCA-R3CD, 2013 WL 5436701, at *6 (Tenn. Crim. App., at Nashville, Sept. 27, 2013), this Court criticized the reasoning of *Edwards*, noting that the failure of a defendant to complete a criminal offense is not an element of criminal attempt. The court concluded "[t]he holding in *Kevin Fritz Edwards* elevates a defendant's failure to complete an offense to the status of an element of that offense, an outcome clearly not contemplated by the legislature, which removed as a defense 'that the offense attempted was actually committed.'" *Id.*(citing T.C.A. § 39-12-101(c)); *see also State v. Reginald Lamont Graham*, No. M2012-CCA-R3-CD, 2013 WL 5436690, at *5-7 (Tenn. Crim. App., at Nashville, Sept. 27, 2013) (rejecting *Kevin Fritz Edwards* to determine "absence of a completed offense is not an element of the offense of criminal attempt.").

When viewing the evidence in a light most favorable to the State, the proof shows that Appellant came to Ms. Brooks' home at night without her permission. He pounded on the door until it was opened by Mr. Harrison. At that point, Appellant "went crazy," forcing open the storm door, accosting Mr. Harrison, yelling obscenities, and threatening to kill people. Appellant himself admitted that he "pushed that guy out of the way" and entered the house. From this proof, a reasonable jury could conclude that Appellant took substantial steps toward committing aggravated burglary. In other words, a reasonable jury could conclude that Appellant intended to enter the home of Ms. Brooks to commit a felony, theft, or assault, and that Appellant's actions constituted a substantial step toward the completion of that intended act.

Without a doubt, the jury's verdict is inconsistent with the State's theory of the case, that Appellant actually completed the offense of aggravated burglary. However, the task of weighing the evidence at trial belongs to the jury. In this case, the jury chose to accredit the State's witnesses, determining that Appellant's actions satisfied the elements of attempted aggravated burglary. Moreover, the absence of a completed offense is not an element of the offense of criminal attempt. *See Jeremy Wendell Thorpe*, 2013 WL 5436701, at *6. In other words, proof that Appellant actually completed the criminal offense does not render the evidence insufficient to sustain a conviction for an attempt of the same offense. Appellant is not entitled to relief on this issue.

## *CONCLUSION*

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE